ELVIRA G. BROKAW, as Executrix, and GEORGE T. BROKAW and Others, as Executors, etc., of ISAAC V. BROKAW, Deceased, Respondents, *v.* LOUIS SHERRY, Appellant.

First Department, February 6, 1914.

Landlord and tenant — lease construed — cost of removing encroachments — joint tort feasors.

Where a building encroaching upon a sidewalk and having vaults thereunder has been built with the approval and at the expense of the landlord, but under the direction of the tenant pursuant to the terms of a lease providing that the tenant should pay all charges of every kind, "extraordinary as well as ordinary," as shall, during the term of the lease, be imposed on the premises "by virtue of, or by reason of any present or future law, ordinance, or authority whatsoever," and expressly exempting the tenant from income, transfer and inheritance taxes, and the city subsequently revokes all permits for the encroachments and orders their removal, the tenant is liable for the expense thereof paid by the landlord.

*It seems*, that the fact that the encroachment on the sidewalk constituted a nuisance *per se* did not make the landlord and tenant joint tort feasors, so as to preclude the landlord's recovery.

APPEAL by the defendant, Louis Sherry, from a judgment of
the Supreme Court in favor of the plaintiffs, entered in the
office of the clerk of the county of New York on the 3d day of
July, 1913, upon the report of a referee appointed to hear and
determine the issues.

The original plaintiff, Isaac V. Brokaw, died pending the
appeal to the Appellate Division, and his executors were
substituted in his place.

*Franklin Bien,* for the appellant.

*Alfred G. Reeves,* for the respondents.

Judgment affirmed, with costs, on opinion of referee.   (See,
also, *Herald Square Realty Co.* v. *Saks & Co.,* 157 App. Div.
566; *Morrissy* v. *Rhinelander Real Estate Co.,* 158 id. 533.)

Present — INGRAHAM, P. J., McLAUGHLIN, CLARKE, SCOTT
and HOTCHKISS, JJ.

The following is the opinion of the referee:

ARTHUR H. VAN BRUNT, Referee:

Under date of June 5, 1896, the plaintiff Isaac V. Brokaw,
as owner of the premises therein described at the southwest
corner of Fifth avenue and Forty-fourth street in the city of
New York, entered into two certain leases or contracts with
the defendant Louis Sherry.   By the first of these instruments,
hereinafter termed the short lease, Brokaw leased to Sherry the
land therein described for a term ending September 1, 1897,
and Sherry agreed to '' proceed forthwith to remove the build-
ings at present standing on the land above described and
hereby leased, and to make a contract or contracts therefor, and
for the excavation and the erection of a new building, in his
own name, such building to be adapted for use in such business
as the party of the second part [Sherry] is now carrying on at
Fifth Avenue and Thirty-seventh Street, in the City of New
York, and the additional business of a restaurant and an
apartment house   *   *   *   to cover the entire front both on
Fifth Avenue and Forty-fourth Street of the land hereby
leased, and to stand entirely on said land, said building also to
include a cellar and sub-cellar under the same, with vaults under

all the sidewalks, both on Fifth Avenue and on Forty-fourth Street to the curb line, to the extent that the parties hereto may be able to obtain permits for, from the corporation of the City of New York * * * to be built and completed according to plans, specifications, contracts and agreements to be prepared by McKim, Mead and White, architects, which shall first be approved and countersigned by the party hereto of the first part [Brokaw], his executors, administrators or assigns, and to be constructed in all respects in accordance with the laws and ordinances in relation to the construction of buildings in the City of New York, and shall be finished on or before September first, in the year one thousand eight hundred and ninety-seven; such building to cost no less than Four hundred thousand dollars ($400,000) and not over Eight hundred thousand dollars ($800,000)."

Brokaw further agreed to pay all architects and superintendents' charges and all expenses incurred in the removal of the old buildings and the erection of the new building, which building when constructed, together with all additions and improvements thereafter made therein, it was stated, should belong wholly to Brokaw, subject only to the rights of Sherry as lessee. It was further agreed that if work was not commenced within three months after the date of the lease Brokaw should have the right to terminate said lease and the instrument hereinafter mentioned and if Sherry did not proceed with the work in accordance with the terms of the lease after it had been commenced, Brokaw should have the right to proceed therewith.

By the second instrument, hereinafter called the long lease, Brokaw leased the premises therein described (being the same premises set forth in the short lease), together with the building to be erected thereon, to Sherry for a term of twenty-one years from September 1, 1897, at a certain fixed ground rent and in addition thereto a sum equal to five per cent upon the cost of the building.

Sherry covenanted therein to duly pay the rental reserved and to "bear, pay and discharge all such duties, charges, taxes, assessments, Croton water rates and charges, and payments of every kind whatsoever, extraordinary as well as ordinary, as shall during the term hereby granted be imposed on,

or grow due and payable out of, or for or by reason of the said demised premises, or any part thereof, or the reversion or reversions, rents, issues or profits thereof, or upon or by the said party of the first part [Brokaw], his executors, administrators or assigns, in respect to or by reason of the said reversion or reversions, rents, issues or profits, through, by virtue of, or by reason of any present or future law, ordinance or authority whatsoever; but nothing herein contained shall require the said lessee [Sherry], his successors or assigns, to pay any income, transfer or inheritance tax or any tax imposed on account of the death or the devolution of title to the heirs or devisees of the owner or owners of the premises hereby leased."

He further covenanted not to carry on or suffer to be carried on certain business therein set forth and described upon said premises, nor to "use or permit the use of the same, or any part thereof, for any purpose that may be contrary to the law of the State, or of the city or county of New York, or contrary to any ordinance of any board or department of the city of New York having the right to make the same."

On or about September 1, 1896, Sherry entered into possession of the premises under the short lease and proceeded to carry out its terms. The structure built thereon and known as the "Sherry Building" was erected by Sherry, pursuant to the terms of said short lease, according to plans and specifications, contracts and agreements prepared by McKim, Mead & White, architects, and approved and countersigned by Brokaw, and the same was completed about August, 1898, whereupon Sherry entered into possession thereof under the terms of the long lease, which possession still continues.

The plans from which the Sherry building was constructed called for and there was placed in front of said building on the Fifth avenue side a coping upon which was placed six ornamental lamps and standards and also a platform about six inches above the level of the sidewalk, all of which projected out upon the sidewalk and were *per se* nuisances.

The plans further called for the construction of vaults under the sidewalk on Fifth avenue to the curb line. Sherry entered into a contract with one Clarence L. Smith, which contract was approved by Brokaw pursuant to the provisions of the short

lease, for the excavation, plastering work and materials necessary in the construction of such vaults. In order to carry out this contract Smith made application to the department of public works for permission to construct the same under the sidewalk, and on July 16, 1896, a permit for this work was issued to Smith pursuant to said application, which permit was revocable.

The building, including the vaults and obstructions on the sidewalk, as called for by the plans, was erected as above stated.

The board of estimate and apportionment passed resolutions on April 1, 1908, April 24, 1908, and December 18, 1908, in regard to widening the carriageway on Fifth avenue, between Twenty-fifth and Forty-seventh streets, by which all permits for encroachments were repealed and revoked and the width of the carriageway was fixed at fifty-five feet and the sidewalks at twenty-two and one-half feet each, and the borough president was directed to construct the said carriageway and sidewalks accordingly. Said resolutions further provided that encroachments of not more than two and one-half feet from the building line were not to be disturbed.

On or about May 27, 1909, notice was given to the owner and occupant of 524, 526 and 528 Fifth avenue, which is the Sherry building, to make all changes necessary in order to comply with such resolutions.

Brokaw and Sherry each claimed that the changes ordered should be made by and at the expense of the other, and in June, 1909, the city being about to proceed to remove the vaults and structures on the sidewalks, an agreement was made between them dated June 9, 1909, providing that the work rendered necessary by the action of the city should be done in the same way in which the building was originally constructed, namely, that the lessee have the plans made and execute the contracts for such work subject to the approval of the city of New York and of the owner, which should not be unreasonably refused, and the said owner should pay the amounts required for architect's services and doing the work, which work should be under the supervision of the lessee; that such action should be without prejudice to the liability of either party for the expense of

the alterations, and that this question should be determined entirely independent of the making of such contracts and plans and the payment for such alterations, and that such agreement should not be used by either party as affecting the question of liability for the payment of the work to be done thereunder. The agreement further provided that the question of liability should be determined upon an agreed case to the Appellate Division, First Department, based upon the leases, contracts and other papers relative to the construction and use of the building, and the ordinances and regulations by virtue of which the city widened Fifth avenue.

The work in question was thereafter done in accordance with said agreement and Brokaw paid at various times sums aggregating $17,886.61, which was the reasonable value of the work done. All but $350 of this sum was for work done in remodeling the vaults.

Brokaw demanded of Sherry repayment of said sum, which demand was refused, and by agreement of the parties this action was substituted for the agreed statement of facts provided for in the agreement of June 9, 1909.

The defendant claims that by reason of Brokaw having stipulated that all specifications, contracts and agreements should be approved by him, he built the building, the vaults and the encroachment on the sidewalk; that the construction of such of these as were ordered removed was a tort, and that, therefore, Brokaw was a joint tort feasor with Sherry and cannot recover the amount paid for their removal.

The short lease shows that the intention of the parties was that Sherry should be free to erect such building on the demised premises as he thought best suited for his purposes and place such vaults under the sidewalk as he could obtain permits for, all subject to the approval of Brokaw. It is manifest from the instruments executed and from the testimony adduced that the provision requiring the approval of Brokaw was merely for the purpose of insuring the erection of a proper building upon the lot. Sherry was left free to erect such a building, within reasonable limits, as suited his purposes, and, therefore, the giving of this approval did not involve any question of personal

taste, preference or convenience, and hence the same could not be willfully withheld (*Duplex Safety Boiler Co.* v. *Garden*, 101 N. Y. 390; *Gearty* v. *Mayor, etc.*, 171 id. 61; *Dennis* v. *M. B. Association*, 120 id. 497), and from the surrounding circumstances it is clear that the building and vaults were constructed by Sherry. The vaults were lawful when built and continued to be so until the permit for them was revoked.

The long lease provided that Sherry should pay annually as rent the ground rent of $47,250 with an additional sum of five per cent of the total cost of constructing the building. In it he also covenanted to pay and discharge all such duties, charges, taxes, assessments, Croton water rates and charges and payments of every kind whatsoever, extraordinary as well as ordinary, as should during the term thereby granted be imposed on, or grow due and payable out of, or by reason of said demised premises or any part thereof, except income tax, transfer or inheritance tax.

In other words, Brokaw's care was to assure himself beyond peradventure of the receipt during the continuance of the lease or any renewal thereof of a net rental equal to the ground rent and five per cent on the cash which he paid out in the construction of the building, that is, the cost thereof. That the intention of the parties was that every possible charge should be paid for by Sherry appears not only from the very sweeping provisions of Sherry's covenant to " pay and discharge all such duties, charges * * * and payments of every kind whatsoever, extraordinary as well as ordinary, as shall, during the term hereby granted, be imposed on, or grow due and payable out of, or for or by reason of the said demised premises, or any part thereof," but also from the fact that, appreciating such sweeping language might possibly be construed to include income, transfer and inheritance taxes, such charges were specifically excluded.

It is urged that the vaults and encroachments are not included within the land described in the leases, and, therefore, the amounts expended for changes made did not grow due and payable out of the demised premises, but the short lease provided for the erection of the building on the demised premises " with vaults under all the sidewalks, both on Fifth Avenue and

on Forty-fourth Street to the curb line, to the extent that the parties hereto may be able to obtain permits for, from the corporation of the City of New York," and in the long lease Sherry covenanted not only to pay all charges to grow due and payable out of the demised premises but also all payments to grow due " for or by reason of the said demised premises, or any part thereof." The vaults, platform, pillars, etc., in short all that was altered or removed, were part of one single building and any expenses occasioned by the necessity of removing the same grew out of the demised premises and hence was an expense which Sherry covenanted to pay.

Finally it is urged that because the platform, pillars, etc., were a nuisance *per se,* differing in that respect from the vaults, therefore, the cost of their removal should be borne by Brokaw upon the ground that he was a joint *tort feasor* with Sherry.

Brokaw merely approved the plans, but Sherry built the obstructions, and when their removal was ordered by the authorities it, therefore, became his duty to remove them. (*City of New York* v. *Rice,* 198 N. Y. 124; *Deshong* v. *City of New York,* 176 id. 475.)

By reason of the conclusion reached in construing the leases I have not deemed it necessary to consider the question of the common-law liability of Sherry as tenant in the light of his covenants to repair and to return the property to the landlord in good condition.

Brokaw is, therefore, entitled to judgment as prayed for in the complaint.