HERALD SQUARE REALTY COMPANY, Respondent, *v.*
SAKS & COMPANY, Appellant.

Lease — provisions examined and held not to require tenant to
make extraordinary and unforeseen building alterations ordered
by authorities.

The predecessors of both the parties in interest entered into an
agreement under which there was to be erected a building suitable
for defendant's business in accordance with plans to be submitted
to it.   The building having been erected, defendant entered into a
lease thereof under the provisions of which it is required to " com-
ply at its own expense with all orders, notices, regulations or
requirements of any Municipal, State or other Authority or
Department, or of the New York Board of Fire Underwriters." This
is supplemented by a clause making it the tenant's duty to keep
" the demised premises and every portion thereof, inside and outside,
\* \* \* in good order, condition and repair." At the time of the
execution of the lease it had long been the common practice of the
authorities to sanction and permit projections of parts of buildings
upon the streets; but such authorities have since decided that the
display windows on the ground floor of the building were encroach-
ments on the street and directed their removal.· This has been
done by the owner which sues the tenant to recover the expense.
*Held*, on examination of the lease, that its language construed in
the light of contemporaneous regulations, usages and customs,
seems to require the conclusion that it was not the purpose of the
parties to subject the tenant to an expense caused wholly by
extraordinary and unforeseen building alterations made necessary
by a subsequent and radical change in the policy of the municipal
government. (*Brokaw* v. *Sherry*, 161 App. Div. 796; 213 N. Y. 685,
distinguished.)

*Herald Square Realty Co.* v. *Saks & Co.*, 157 App. Div. 566,
reversed.

(Argued June 9, 1915;  decided July 13, 1915.)

APPEAL from a judgment of the Appellate Division of
the Supreme Court in the first judicial department,
entered July 23, 1913, in favor of plaintiff upon the sub-
mission of a controversy under section 1279 of the Code
of Civil Procedure.

The nature of the controversy and the facts, so far as material, are stated in the opinion.

*Alton B. Parker* for appellant. The removal of any portion of the structure was never contemplated by the parties, nor provided for in the lease or otherwise. (*City of New York* v. *U. S. Steel Co.*, 116 App. Div. 349.)

*Samson Lachman* and *Theodore Baumeister* for respondent. It was the clear intention of the parties to this lease to impose upon the tenant an expense of this character. (*Brokaw* v. *Sherry*, 161 App. Div. 796; 213 N. Y. 685; *Morrissy* v. *Rhinelander R. E. Co.*, 158 App. Div. 533; *Markham* v. *David Stevenson Brewing Company*, 104 App. Div. 420; 111 App. Div. 178; 188 N. Y. 593; *Bushwick Realty Company* v. *Sanitary Fire Proofing Company*, 129 App. Div. 533; *Harder Realty Company* v. *Sam Ping Lee*, 74 Misc. Rep. 436; *Jacobs* v. *McGuire*, 77 Misc. Rep. 119; *Lockrow* v. *Horgan*, 58 N. Y. 635; *Lehmaier* v. *Jones*, 100 App. Div. 495; *City of New York* v. *U. S. Trust Co.*, 116 App. Div. 249.)

WERNER, J. In 1912, the board of estimate and apportionment in the city of New York decided that the display windows in the ground floor stores of the building on the southwest corner of Broadway and Thirty-fourth street, owned by the plaintiff and occupied by the defendant, were encroachments on these streets, and directed that they be removed. That direction has been complied with, and now the question to be decided is whether the owner or the tenant shall bear the expense of making the removals. This question was taken to the Appellate Division upon a submitted controversy under section 1279 of the Code of Civil Procedure, and the court, by a divided vote, decided against the defendant. This appeal is from the judgment entered on that decision.

The relevant facts thus submitted are few and simple. In May, 1901, the predecessors of both the parties in

interest entered into an agreement, under which there was to be erected, on the premises described, a building suitable for the defendant's business of a department store, the plans for which were to be submitted to the prospective tenant. In November, 1901, the owner presented to the department of buildings an application for leave to erect a building, in accordance with plans and specifications which had been filed. These plans indicated that the show windows on the ground floor projected from the front of the building beyond the building lines of Thirty-fourth street and Broadway covering a space varying from nothing to twelve inches. The plans and specifications and the application were duly approved by the commissioner of buildings for the boroughs of Manhattan and The Bronx on the 27th day of December, 1901. Meanwhile the parties to the agreement had both been incorporated under the respective names which appear in the title of this proceeding.

Thereafter (between December, 1901, and October, 1902) the plaintiff erected the building in accordance with the plans and specifications, and " during the course of the erection of said building, the plans therefor were from time to time submitted to the defendant," who has occupied the building ever since its completion.

In March, 1911, the board of estimate and apportionment of the city of New York adopted a resolution repealing and revoking all ordinances and other official acts under which the municipal authorities had theretofore permitted and sanctioned any encroachments in this part of Thirty-fourth street, and directing the president of the borough of Manhattan to remove the same. In 1912 the same board adopted a similar resolution applicable to Broadway in the vicinity described. Pursuant to these resolutions the show windows in question were removed under the direction of the borough president.

The lease of the building was executed November 2d, 1903, about eight years prior to the adoption of these

resolutions, and it covers a term of twenty years and six months.   In addition to the stipulated rental of $170,000, the defendant agreed to pay all water rates, " whether ordinary or extraordinary," all taxes, assessments, charges and impositions ordinarily imposed, and all others of every kind.   The clause of the lease on which plaintiff mainly relies is the one which requires the defendant to " comply at its own expense with all orders, notices, regulations or requirements of any Municipal, State or other Authority or Department, or of the New York Board of Fire Underwriters," supplemented, as it is, by the stipulation as to the tenant's duty to keep " the demised premises and every portion thereof, inside and outside,   *   *   *   in good order, condition and repair."

In this connection it is of some importance to note that the lease also obligates the defendant, as lessee, to keep in repair a considerable number of specified appurtenances and fixtures which the plaintiff installed to meet the needs or serve the conveniences of defendant's business.   These include a cash carrier system, an electrical lighting and power plant, elevators, a package chute, fire extinguishing apparatus, drinking fountains, flagpoles and water tanks.

From this statement of the essential facts it is apparent that the plaintiff erected for the defendant a building specially suited to the defendant's business of conducting a department store; that before the erection of the building was commenced and during the progress of the work, the plans were submitted to the defendant, and that these plans disclosed the projections of the show windows beyond the building line into the street.   It does not appear whether this feature of the plans was specifically called to the attention of the defendant.

The resolutions of the board of estimate and apportionment, to which we have referred, indicate that at the time of their adoption it had long been the common practice of the authorities in the city of New York to sanction and permit projections of parts of buildings upon

the streets; and the recent records of this court bear witness to the considerable number of instances in which the display windows of retail mercantile establishments have lately been held to be encroachments that must be removed at the direction of the proper municipal authorities., This change of municipal policy has taken place, however, since the execution of the lease between these parties, and the construction of the lease, to the extent that it may be determined by extrinsic circumstances, must depend upon the conditions that existed at the time of its execution. When these parties agreed that the defendants would comply with " all orders, notices, regulations or requirements" of the municipal authorities, etc., it was still a part of the administrative policy of the city to sanction and even to license show windows and other building projections that were encroachments on the streets, and this policy remained unchanged for eight years thereafter. It is not to be assumed, therefore, that the comprehensive phrases of the lease, all of which were quite germane and appropriate to existing conditions, were intended to apply to future events not then in contemplation. The lease bears evidence on its face of having been carefully drawn by skilled counsel, but it contains no intrinsic indications that it was intended to cover radical changes in the building laws of the future. Had it been the purpose of the parties to guard against the extraordinary contingency that some later municipal administration might require the removal of such structural encroachments as show windows, they could easily have expressed that important consideration in terms too definite to be misunderstood. The covenant which binds the defendant to comply with "all orders, notices, regulations and requirements" of the municipal and state authorities is broad and inclusive, it is true, but it is in the general form almost universally found in leases of urban real estate, and its obvious purpose is to relieve the owner from burdens that would naturally and legally

fall on him unless, in accordance with common usage, the tenant is specially charged therewith. The matter in dispute is not of that character. Here the tenant is sought to be charged with the expense of making an important and permanent structural change in the building occupied by him. This burden is one that of course falls upon the owner, and if it is to be shifted to the tenant the warrant for the change should be plainly discoverable in the lease. We can find in the lease no indication that this was the intention of the parties, and there are in it some suggestions that tend to negative the plaintiff's assertions in this behalf. In that portion of the instrument which specifies that the defendant is to pay all taxes, water rents and assessments of all kinds, it is expressly provided that he shall pay such charges "whether ordinary or extraordinary," and "not only those commonly imposed." Under the rule of *ejusdem generis* this reference to "extraordinary" expenditures must be limited to the class in which they are mentioned. Taxes and assessments are not in the same category with the cost of making substantial changes in a commercial building. There is annexed to the lease a list of fixtures installed by the landlord, including electrical apparatus, elevators, fire extinguishers, drinking fountains, flagpoles and water tanks. These were all matters peculiarly within the domain of municipal regulation, and the stipulation requiring the defendant to comply with the orders, notices, regulations and requirements of municipal and state authorities may well be referred to these general subjects, which are quite commonly the subject of negotiation and agreement between landlord and tenant.

It is impossible, of course, to lay down a general rule that will precisely fit all cases. The language of this lease, construed in the light of contemporaneous regulations, usages and customs, seems to require the conclusion that it was not the purpose of the parties to subject the tenant to an expense caused wholly by extraordinary and unfore-

seen building alterations made necessary by a subsequent and radical change in the policy of the municipal government, and we are brought to this conclusion despite the forceful argument of counsel for the plaintiff in which he contends that the expense of complying with the order of the borough president, directing the removal of the show windows, comes within the very letter of the lease. We think that this extraordinary expense was not in the contemplation of the parties when this lease was made. (*May* v. *Gillis*, 169 N. Y. 330.)

Counsel for the plaintiff relies on *Brokaw* v. *Sherry* (161 App. Div. 796; affd., 213 N. Y. 685). Our conclusion does not conflict with the decision in that case. There is a marked difference between the two cases. In the case of *Sherry,* the tenant was to have the direction of the construction of the building, although the owner was to bear the expense. The contract provided that the building was " to stand entirely on said land." A coping and platform projected beyond the building line and was ordered removed. The lease provided that the tenant was to make " payments of every kind whatsoever, extraordinary as well as ordinary * * * by virtue of, or by reason of any present or future law, ordinance or authority whatsoever." There the contract distinctly provided that the building was to stand entirely upon the land that was leased to the defendant, and it contained language clearly designed to charge him as tenant with the expense of removing any encroachments upon the street. That case is the precise antithesis of the case at bar. So far from supporting the contention of the respondent, it seems rather to be an authority for the defendant.

We are, therefore, of the opinion that the judgment should be reversed and judgment directed in favor of the defendant, without costs.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, COLLIN and MILLER, JJ., concur; CARDOZO, J., not sitting.

Judgment accordingly.