WILLIAM N. COHEN, Respondent, v. EDWARD MARGOLIES, Appellant.

First Department, May 28, 1920.

Landlord and tenant — when tenant liable for expense of making extensive alterations or improvements — liability for cost of erecting fire escapes and iron stairways pursuant to subdivision 4 of section 79b of Labor Law.

Whether a lessee, who has covenanted in his lease to comply with the laws, orders, regulations and notices of the public authorities affecting the demised premises, will be required to bear the cost of making extensive alterations or improvements depends upon the length of the term of the tenancy, the character of the occupancy and the nature and scope of the other covenants and obligations in the lease assumed by the lessee.

The foregoing rule applied to a lessee who was held liable for the payment of the expense incurred by the landlord upon his refusal to comply with an order of the fire department of the city of New York made pursuant to subdivision 4 of section 79b of the Labor Law, requiring the erection of fire escapes and iron stairways to serve as egress from the premises which had been changed at the lessee's expense, at a cost of not less than $15,000, from a residence into a building also adaptable to commercial use, in accordance with the stipulations in the lease.

DOWLING and MERRELL, JJ., dissent, with opinion.

APPEAL by the defendant, Edward Margolies, from a determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 10th day of December, 1919, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Ninth District, in favor of the plaintiff.

*Nathan G. Goldberger* of counsel [*Paul M. Crandell* and *Emil Frankel* with him on the brief], for the appellant.

*Harry J. Leffert* of counsel [*Goldsmith, Cohen, Cole & Weiss,* attorneys], for the respondent.

GREENBAUM, J.:

The action is based upon the covenants of a lease entered into between the plaintiff as landlord and the defendant as one of the tenants in which the latter covenanted that " they will promptly comply with each, every and all laws, orders, regulations and notices made by or pursuant to any Federal, State, County or Municipal or other lawful authority, in, upon, appertaining to or affecting the said demised premises, or their appurtenances, at their own sole cost and expense, and will pay all fines and penalties incurred by the said premises or by the parties of the first part or second part hereto, which may be imposed by reason of any failure, actual or alleged, on either of their parts, thus promptly to comply with and execute the same, and further covenant and agree that they will not permit the said premises to be or remain in a condition that may be deemed noxious or injurious to those within the property or neighboring persons, or for any purpose or occupation which may be deemed extra hazardous by reason of fire."

The lease was made on the 7th of September, 1910. On August 29, 1917, plaintiff received a notice from the bureau of fire prevention of the fire department of the city of New York requiring the doing of certain work upon the premises. A copy of this notice was promptly transmitted to the defendant. The notice was subsequently amended by the board of standards and appeals of which defendant was also duly advised. The amended notice provided as follows: " I. Provide a 60-degree iron stairway in the rear from the fourth story to the roof of the two-story extension and from the foot of the stairway provide a double thickness of 26 gauge metal 4 feet wide placed on the roof of the two-story extension, and provide a 60-degree iron stairway from the roof of the two-story extension to the yard, and provide a balcony at the 2nd story serving as egress from the factory, with a

60-degree stairway direct to yard, and make the window in the first story at the fire escape fireproof self-closing." The order also provided for a " stationary iron ladder leading to scuttle opening in the roof, also a gooseneck ladder to be provided from the rear balcony to the roof."

Defendant failed to comply with the order. The plaintiff was served with a summons requiring him to show cause why he should not pay a penalty for failure to comply with the order. The court proceedings were adjourned from time to time and on or about February 5, 1919, plaintiff notified defendant that in consequence of his failure to comply with the order he would immediately proceed to have the work done and hold defendant liable therefor under the terms of the lease. This action is brought to recover the reasonable costs incurred in complying with the order of the fire department. The order shows upon its face that it was made pursuant to the requirements of the Labor Law (§ 79b, subd. 4, added by Laws of 1913, chap. 461, as amd. by Laws of 1914, chap. 366).

The covenant in its terms is broad and all embracing. It contains no exceptions. The courts have nevertheless held in construing similar covenants that they did not apply to substantial and expensive alterations or repairs which involved structural parts of the building such as the rebuilding of walls or foundations (*Warrin* v. *Haverty,* 159 App. Div. 840) nor to " extraordinary and expensive alterations " made necessary by statutes or regulations enacted subsequent to the time when the lease was made. (*Herald Square Realty Co.* v. *Saks & Co.,* 215 N. Y. 427, 432, 433.) These conclusions were based upon the theory that such work could not have been within the contemplation of the parties to the lease.

Speaking of such a covenant it was truly observed in *Herald Square Realty Co.* v. *Saks & Co. (supra):* " It is impossible, of course, to lay down a general rule that will precisely fit all cases."

The intention of the parties as to the scope of such a covenant must be ascertained from the provisions of the lease and the circumstances affecting the uses to which the building was to be put. Instances in which the courts have held

the tenant to be bound to erect fire escapes under a similar covenant are: *Jacobs* v. *McGuire* (77 Misc. Rep. 119); *Pross* v. *Excelsior Cleaning & Dyeing Co., Inc.* (100 id. 195).

In order to determine whether the defendant was obligated to erect the fire escape under discussion it becomes necessary to analyze the lease signed by him and the character of the building before and after its erection. It is evident from a reading of the pleadings and of what transpired upon the trial that at the time of the making of the lease the buildings were being used for residential purposes and that at the time when the orders of the fire department were issued they had been transformed into buildings intended for commercial and residential uses.

The original term of the lease was for ten years. It contained carefully considered provisions for an extended term of eleven years. The tenants were obligated to pay all taxes and assessments and all Croton water rents and meter charges, ordinary as well as extraordinary. The tenants also covenanted to make " all such repairs as shall be necessary to properly uphold, maintain and preserve the said premises, and that all such repairs shall be fully equal to the original in class and quality." The use of the premises was limited to residential or mercantile purposes.

Under the 8th paragraph of the lease it was provided " that in case the building or buildings erected on the said premises hereby leased shall be partially damaged by fire, the same shall be repaired as speedily as possible at the expense of the parties of the second part [the tenants]; that in case of the total destruction of the premises, the same shall be rebuilt as hereinafter provided for, and notwithstanding any such total or partial destruction, this lease shall continue for the balance of the term herein provided for unless sooner terminated by the party of the first part by reason of any violations thereof by the parties of the second part. In case of the total destruction of any of the buildings erected upon the said premises, said parties of the second part shall erect a new building or buildings in place thereof at a cost of at least the amount collected from the various insurance companies insuring the said premises for the benefit of either the party of the first part or the parties of the second part," etc.

Under paragraph 11 it was agreed that the landlord will keep the premises insured " in companies satisfactory to him for the sum of Fifty thousand dollars at the expense of the parties of the second part, who shall promptly pay the premiums upon any and all such policies to the party of the first part or the insurance companies," etc.

The 19th paragraph of the lease provides for improvements to be made by the tenants at their sole cost and expense of the value of not less than the sum of $15,000, coupled with the further agreement on their part that they will " execute and deliver to the party of the first part a bond with good and sufficient surety or sureties to be approved by the party of the first part, in the penal sum of Seventy-five hundred dollars ($7500), to insure the party of the first part against loss by reason of any lien or liens which may be filed against said property."

It was also therein covenanted " that all alterations and improvements made in the said premises shall be in accordance with plans and specifications filed with and approved by the Building Department of the City of New York, or such other Department or Bureau as may have jurisdiction in relation to such alterations and improvements, and all such plans and specifications are to be first submitted to and approved by the party of the first part."

We thus find a lease between the parties in which the tenants obligated themselves to do many acts which ordinarily devolve upon the landlord. The order for the fire escapes was given under subdivision 4 of section 79b of the Labor Law (as amd. *supra*). That section in terms is applicable to a factory building, from which we may infer that the premises in question had been altered by the tenants for factory uses and that the alterations were in fact made pursuant to the provisions of the lease. Considering all the various provisions in the lease to which reference has been made, particularly those relating to the rebuilding of the premises in case of partial or total destruction of the premises, it seems clear that the covenant should be so construed as to make it obligatory upon the defendant to comply with the order of the fire department previously described. The failure of the defendant to comply with the order entitled plaintiff

to recover the reasonable amount which he expended in doing the work.

The determination of the Appellate Term is affirmed, with costs.

CLARKE, P. J., and SMITH, J., concur; DOWLING and MERRELL, JJ., dissent.

DOWLING, J. (dissenting):

On September 7, 1910, plaintiff as landlord and defendants as tenants entered into an indenture of lease whereby the landlord leased to the tenants certain parcels of property in the borough of Manhattan, city of New York, known as Nos. 117–119–121 West Forty-seventh street, for the term of ten years from midnight of October 31, 1910. The said lease contained the following provision:

" *Second.* The parties of the second part further agree and covenant that they will promptly comply with each, every and all laws, orders, regulations and notices made by or pursuant to any Federal, State, County or Municipal or other lawful authority, in, upon, appertaining to or affecting the said demised premises or their appurtenances, at their own sole cost and expense, and will pay all fines and penalties incurred by the said premises or by the parties of the first part or second part hereto, which may be imposed by reason of any failure, actual or alleged, on either of their parts, thus promptly to comply with and execute the same, and further covenant and agree that they will not permit the said premises to be or remain in a condition that may be deemed noxious or injurious to those within the property or neighboring persons, or for any purpose or occupation which may be deemed extra hazardous by reason of fire."

The tenants entered upon possession of the premises and remained in possession thereof until the time of the commencement of this action. On August 29, 1917, the bureau of fire prevention of the fire department of the city of New York sent the landlord a notice requiring that an outside iron balcony fire escape be built on the premises; that the interior stairway be extended to the roof; that the interior stairway be inclosed in compliance with the Labor Law of the State

of New York; and containing a notice that a prosecution for the violations therein mentioned would be commenced unless said violations were removed within thirty days. Plaintiff caused said notice to be sent about September 1, 1917, to defendant Margolies with a request that the tenants comply therewith. Subsequently said notice was amended by the board of standards and appeals and notice given to the landlord by said bureau of fire prevention of the pendency of amended orders in the following form:

" A search of our records indicates that the following order is pending against the above premises:
" Order No. 65721 LD.

" 1. Provide a 60-degree iron stairway in the rear from the fourth story to the roof of the two-story extension and from the foot of the stairway provide a double thickness of 26 gauge metal 4 feet wide placed on the roof of the two-story extension, and provide a 60-degree iron stairway from the roof of the two-story extension to the yard, and provide a balcony at the 2nd story serving as egress from the factory, with a 60-degree stairway direct to yard, and make the window in the first story at the fire escape fireproof self-closing.

" 2. Provide a stationary iron ladder leading to scuttle opening in the roof, also a gooseneck ladder to be provided from the rear balcony to the roof.

" The foregoing will not operate to prevent the issuance and service of additional orders in the future if they are deemed necessary.

" Respectfully,

" BUREAU OF FIRE PREVENTION,

" By W. F. DOYLE,

" *Chief.*   H. K."

Of these amended orders notice was given to the defendant Margolies with a request that the tenants comply therewith. On January 3, 1919, the plaintiff was served with a summons directing him to attend at the Municipal Court in the Municipal Building, borough of Manhattan, on January seventh and show cause why he should not be compelled to pay a penalty for failure to comply with the aforesaid orders. Adjournments were given from time to time until February 3,

1919, at which time and after an adjournment had been given to March third, the assistant corporation counsel announced that this would be the last adjournment granted and unless such orders were complied with a fine would be imposed upon the landlord, of all of which Margolies had notice. Meantime and on December 30, 1918, the landlord had notified the defendants that unless work was commenced by the tenants to comply with the orders, not later than January 13, 1919, the landlord would proceed to have the work done for the account of the tenants. The tenants, however, did not commence, or cause to be commenced, the work on said premises in compliance with such orders, and on February 5, 1919, the landlord notified the defendant Margolies that inasmuch as the tenants had failed to commence work in compliance with the orders the landlord had instructed a contractor to proceed with the work at a cost of $675 and the latter would hold the tenants liable for payment for such work. The said work was performed by the contractor, who delivered to the landlord a notice from the fire department of the city of New York that the orders had been dismissed on the records of the department, and thereafter and about March 10, 1919, the landlord paid the contractor $675 for the work, which sum the tenants have refused to repay, although demand therefor has been made.

The lease in question contains no restriction upon the use of the premises save that they should not be used for any other than legitimate and law-abiding purposes, and for residential or mercantile uses, and that they would not be used for any other purpose or in any manner that might be injurious or destroy their value. It also contains a covenant that the tenants would not make any alterations in the building which should lessen their rental value in the opinion of the landlord, and would not make any alterations therein without his written consent first had and obtained. It is further provided that all alterations, additions and improvements of any and every name, nature and description, fixtures and otherwise, which may be put upon such premises or any part thereof during the term of the lease shall thereby become and remain the property of the landlord, except trade fixtures.

The record shows that at the time the fire escapes were installed the ground floor of the building No. 117 West Forty-seventh street was occupied as a restaurant, the next floor as a factory and the two upper floors were bachelor apartments. The lease contains a clause that improvements were to be made upon the premises at the sole expense of the tenants, to cost not less than $15,000, and to be finished not later than January 1, 1911, but what the nature of the tenancies in these buildings was before the lease to defendants does not appear. There is absolutely no evidence to show that the requirement for the erection of the fire escapes was due in any manner to the improvements in the building made by the tenants, or to the nature of their use thereof. There is no suggestion that the buildings were in any way used by the tenants or their subtenants in contravention of the terms of the lease. These fire escapes consisted of a balcony at the fourth story with a gooseneck ladder to the roof; a sixty-degree stairway to the third-story extension and a flame-shield from this stairway to the platform at the third-story extension; a stairway down to the second story and from the second story to the yard, and also a scuttle ladder from the top floor inside to the roof. Also one window at the first story was fireproofed by covering the old frame with galvanized iron and putting in a new fireproof sash. The fire escapes have iron brackets hanging to the wall and they were all anchored to the wall by means of a bolt coming through the wall and a steel plate on the inside up against the brick wall. This steel plate was twelve by twelve or eight by eight and the brackets were filled in with cement. These constructions concededly are meant to be permanent and in fact become a part of the building itself.

I deem it to be settled law in this State since the decision in *Herald Square Realty Co.* v. *Saks & Co.* (215 N. Y. 427) that structural changes or structural repairs in a building are not to be paid for by the tenant under such general clauses as are contained in the lease in question. To extend the burden upon the tenant beyond ordinary repairs so as to make him liable to comply with orders of the municipal departments or other authorities, which require the making

of structural and permanent changes in the building itself, there must be direct, plain and unmistakable language contained in the lease. Such a rule exempting a tenant from liability for making structural changes in a building was laid down in *Warrin* v. *Haverty* (159 App. Div. 840) and was reiterated in *Younger* v. *Campbell* (177 id. 403); *Harburger* v. *Campbell* (Id. 409) and *Bubeck* v. *Farmers' Loan & Trust Co.* (180 id. 542). The rule was again applied in *Higgins* v. *Carter's Ink Co.* (226 N. Y. 642) affirming, without opinion, an affirmance by this court (178 App. Div. 889) of a directed verdict for the tenant.

As it does not appear that the requirement for the erection of the fire escape in question was in any way due to the nature of the use of those buildings by the tenants nor that the tenants had in any way violated the terms of the lease to them, and as the work directed to be done constituted a structural change permanent in its nature and becoming a part of the realty, and as the provisions of the lease do not cast the burden to make such changes on the tenants, I am of the opinion that, under the uniform decisions of this court in recent years, the tenant was not chargeable with the cost of doing this work and that the determination appealed from should, therefore, be reversed, with costs, and the complaint dismissed, with costs.

MERRELL, J., concurs.

Determination affirmed, with costs.