People ex rel. Pennsylvania Railroad Company, Relator, *v.* John P. Leo, John J. Beatty, Alfred J. Boulton, John De Hart, James P. Holland, James Kearney and John Kenlon, Constituting the Board of Appeals of the City of New York, Defendants.

(Supreme Court, New York Special Term, July, 1920.)

Certiorari — when motion to dismiss writ of, denied — city of New York — lease — board of appeals — Code of Ordinances as amended in 1918, art. II, chap. 12, § 20 — Greater New York charter, §§ 774, 775 and 776-a.

    The relator to which a certain wharf property, known as pier 77 North river, had been leased by the city of New York for a term of ten years, availed itself of privileges of renewal, has been continuously in possession of the property and the thirtieth year of its occupancy will expire July 1, 1921. Between January 3, 1893, and May 15th of the same year, relator at its own expense, as covenanted, erected upon the pier a steel frame shed with wooden floors and sides of corrugated iron which it has ever since maintained and occupied. On April 23, 1919, acting on reports made by inspectors connected with the bureau of fire prevention, the fire commissioner by his deputy issued three separate orders by which relator was required to provide a separate and distinct dry system of automatic sprinklers throughout the pier, which already was equipped with a fire-fighting apparatus. In addition to the rent of $12,000 a year the expenditure which a compliance with one of said orders would entail would be at least $19,000 and might be more. Upon the expiration of the lease the shed with the sprinkler system, if installed, would revert to and

become the property of the city, free of all encumbrances. *Held,* that a motion to dismiss a writ of certiorari to review the determination of the board of appeals affirming the orders of the fire commissioner and to confirm such determination will be denied.

Where in 1918, for the first time, the fire commissioner acquired jurisdiction over the water fronts of the city, a substantial change in the law, the parties, seemingly, could not have contracted with reference to the subject, and, in consequence, the relator cannot be called upon to obey the order of the fire commissioner.

Section 20 of article II of chapter 12 of the Code of Ordinances as amended in 1918, read in connection with sections 774, 775 and 776-a of the Greater New York charter, which confers ample power on the fire commissioner in regard to the enforcement of said ordinance, considered, and *held,* that relator did not come within the purview of said ordinance and that the order of the fire commissioner was invalid.

CERTIORARI proceedings.

O'Brien, Boardman, Parker & Fox (Edwin J. Freedman and Philip W. Boardman, of counsel), for relator.

John P. O'Brien, corporation counsel (Joseph I. Berry and F. E. V. Dunn, of counsel), for defendants.

ERLANGER, J.   On July 1, 1891, pursuant to a resolution adopted by the department of docks and ferries of the city of New York, the mayor, aldermen and commonalty of said city leased to the Pennsylvania Railroad Company all the wharf property known as pier 77, at the foot of West Thirty-seventh street, North river, for the period of ten years, with the privilege of two further renewals for a like term each. The rent reserved for the first term was $10,000 per year, for the second $11,000 and for the third $12,000 per year.

The company availed itself of the two privileges of renewal, and has been continuously in possession of said property. The thirtieth year of its occupancy will expire on July 1, 1921. Between January 3, 1893, and May 15 of the same year the company, as it was required to do by virtue of its covenant, erected upon said pier, at its expense, a shed, and has ever since maintained and occupied it. The shed is constructed of steel frame, wooden floors and sides of corrugated iron, the roof being covered with slag and tin. It is two stories in height at the shore end and one story at the river end, with openings on both sides and ends at the first story. It is used for freight in transit. There are employed about fifty-five persons in and about the pier and shed, and truck and automobile drivers enter thereon for receiving and delivering the freight. The agreed statement of facts more fully describes the property and the fire-fighting apparatus thereon. It was stipulated that the description of the pier, the structure, fire apparatus and nature and quality of merchandise set forth in certain statements were correct, and were always on the pier, with the exception of certain moving picture films found on pier 77 at the time of one of the inspections hereafter referred to. Between March 13, 1919, and September 26, 1919, inspections of the pier were made from time to time by inspectors connected with the bureau of fire prevention, and reports were made to the chief of that bureau of existing conditions. On April 23, 1919, the fire commissioner, through his deputy, issued three separate orders by which the company was required to provide a separate and distinct dry system of automatic sprinklers throughout the pier. The company, feeling itself aggrieved, appealed to the board of appeals, a duly constituted body created by law to hear appeals from determinations of the fire commissioner.

In that appeal the director-general of railroads joined. The reasons of the appeal were recited in the notice. Thereafter the appeal came on to be heard and was disposed of as follows: Order 89556-F was affirmed as to four items and reversed as to one; order 89557-F was reversed; order 89558-F was affirmed — all by a vote of five to one. Before the taking of evidence by said board the appeal taken by the director-general of railroads was withdrawn, and it was then stated that the United States government officials had requested that such withdrawal be made on the ground that they felt they were no longer interested. Subsequent to the board's determination the company, hereafter called the relator, applied to this court for a writ of certiorari, and in its petition set forth the various orders and the action of the said board thereon, claiming that the order 89558-F was erroneous and illegal in the particulars therein specified. The writ thereupon issued, and in the return the defendants fully report all the evidence and proceedings before the appellate body. The facts alleged in the petition are all admitted and the question of law involved is whether the order can be enforced. The defendants move for a final order dismissing the writ and to confirm the determination of the board of appeals. It was made to appear to the court that many like orders have been issued by the fire commissioner against other railroads and the New England Steamship Company, lessees of piers, requiring a similar installation on the properties occupied by them, and that certiorari proceedings were brought by all to test the validity of such orders. It was conceded that this proceeding is to be regarded as the test case before the others are proceeded with. The issue raised by the pleadings is of considerable moment to all concerned. The lease of the relator has but one year to run. In addition to the rent, which is at the

rate of $12,000 per annum, the expenditure which a compliance with the order will entail is $19,000, and that amount may be exceeded. Upon the expiration of the term the shed is to revert to and become the property of the city, free from all incumbrances, and that would be the effect if the lease had been silent in that regard. *People ex rel. International Nav. Co.* v. *Barker,* 153 N. Y. 98. The lease also provides that the city may, upon notice, terminate the tenancy in the event improvement of the waterfront is determined upon, without any claim for damages or compensation on account of the improvements made or erected by the relator. The sprinkler system, if installed, will become a fixture and an inseparable part of the shed, and that will also become the property of the city. There is nothing to prevent the city, as soon as the installation is completed, to give notice terminating the lease if it shall decide to make the improvement. It can hardly be denied that an apparent hardship on the relator is thus imposed, and, under the circumstances, it insists that the order is unreasonable, unnecessary and oppressive. The defendants contend that, irrespective of other provisions of law, the relator bound itself to make the improvement, and hence cannot escape the liability self imposed. This is based upon the theory that the relator covenanted to keep the premises in good repair, and to rebuild the wharf if wholly or partly destroyed by fire, floating ice, collision, or action of the elements; and, further, because it agreed to conform to all laws and orders respecting the use of the pier, although it was stipulated that the lease contains no express provision obligating the relator to comply with the order of the fire commissioner in respect of a sprinkler system installation. It is argued that these provisions indicate that the order to provide a sprinkler system at some future

People ex rel. Penn. R. R. Co. *v.* Leo.    **583**

Misc.]                Supreme Court, July, 1920.

time was fairly within the contemplation of the parties when the original lease and the two renewals were made. This, I think, is a mistaken view of the law. In 1891, when the first lease was executed, the fire commissioner was not vested with any of the powers relating to fire prevention and the installing of devices in and upon property in the city of New York which in recent years was conferred upon him. The exclusive control of waterfronts has been since 1871 (Laws of 1871, chap. 574), exclusively vested in the department of docks, and it so continued until the year 1918, when, for the first time, jurisdiction over such property was acquired by the fire commissioner. This effected a substantial change in the law, and it would seem that the parties could not have contracted with reference to the subject. *Herald Square Realty Co.* v. *Saks & Co.,* 215 N. Y. 427. In my opinion the relator cannot be called upon to obey the order because of any contractual obligation on its part. Authority for the enforcement of the order must be found elsewhere, and section 20 of article 2 of chapter 12 of the Code of Ordinances is next relied upon. Counsel for defendants has furnished a history of that section. It was first a part of the Greater New York charter, and later was incorporated in the Code of Ordinances, and though readopted from time to time, it remained unchanged for upwards of twenty years. In November, 1918, that section was amended, and has since then been in effect, and reads as follows: " Sec. 20. Fire alarm and fire extinguishing appliances. The owners and proprietors of all manufactories, hotels, tenement houses, apartment houses, office buildings, boarding and lodging houses, warehouses, stores and offices, theatres and music halls, and the authorities or persons having charge of all hospitals and asylums, and of the public schools and other public buildings,

churches and other places where large numbers of persons are congregated for purposes of worship, instruction or amusement, *and all piers, bulkheads, wharves, pier sheds, bulkhead sheds or other waterfront structures,* shall provide such means of communicating alarms of fire, accident or danger to the police and fire departments respectively as the fire commissioner or the police commissioner may prescribe, and shall also provide such fire hose, fire extinguishers, buckets, axes, fire hooks, fire doors and other means of preventing and extinguishing fires as the fire commissioner may direct.'' The part in italics was added at that time. Before this amendment was adopted the fire commissioner had issued orders to lessees and occupants of piers to provide such sprinkler system, but the board of appeals rescinded the orders, holding that such property was not included within the terms of the ordinance. The amendment referred to followed this ruling. The ordinance does not provide how it shall be enforced, but sections 774, 775 and 776-a of the charter confer ample power in that regard on the fire commissioner. There can be no doubt under these provisions of the authority of the commissioner to act whenever in his judgment the situation demands it. But can the order be enforced against the relator? Does it come within the purview of the ordinance? Not only is the legality of the order challenged, but the broad claim is made that the amendment does not apply to the relator at all. We know the conditions that the law was designed to meet, and except as to the part which constitutes the amendment its application to the buildings and places over which the fire commissioner has been given jurisdiction is unambiguous, definite and clear. The doubt seems to be limited to the amendment, and as to that divers contentions are urged. The ordinance consists of a single sentence divided only by commas, and is

susceptible of different interpretations.  For example, the first class embraces " *owners and proprietors* of all manufactories, hotels, tenement houses, apartment houses, office buildings, boarding and lodging houses, warehouses, stores and offices, theatres and music halls," who are obliged to make the installation as the fire commissioner may direct.  The next class under a similar duty are " *the authorities or persons having charge* of all hospitals and asylums, schools and other public buildings, churches and other places where large numbers of persons are congregated for purposes of worship, instruction or amusement."  After the word " amusement," which is followed by a comma, the ordinance proceeds to specify a third class, as follows, " *and all piers, bulkheads, wharves, pier sheds, bulkhead sheds or other waterfront structures* " shall provide such means of preventing and extinguishing fires.  As the ordinance stands, does it mean that the owners and proprietors of all piers, bulkheads, wharves, pier sheds, etc., shall make the installation, or does it mean that the *authorities or persons* having charge thereof shall do so?  Or, again, does it mean that the piers, bulkheads and the other inanimate things should provide the means of preventing their own destruction by fire?  Counsel for defendants in his brief argued that if these structures had been mentioned under the first division or class there would be nothing vague or indefinite concerning the application of the powers of the fire commissioner with respect to the duty imposed upon him to enforce the ordinance against such structures; that the ambiguity and indefiniteness of the section as amended is found not in the language itself, which merely specifies the additional structures to which the ordinance is to apply, but to the location of the amendment in the section.  He then proceeded to say in effect that the additional structures were

enumerated under the second division or class because the buildings there specified resembled more those structures than those embraced in the first division or class, and on account of such resemblance that was deemed by the board of aldermen the proper place to make the insertion. I agree with him that it was intended that the added structures should be provided with the means of protection from fire, but who is to provide them? It is his contention that the burden falls on the " owners and proprietors." This necessitates carrying the amended matter to the first division or class. Why place it there when the fact is that all the buildings there described are privately owned and over which the authorities have no charge except as to the limited powers conferred on the fire commissioner? The lawmakers were· presumed to know that the waterfronts of the city were solely in *charge* of the *authorities,* and to my mind inserted the amended matter where it is found intentionally, even though the ownership under that division or class may be both public and private. It was the appropriate place to incorporate it and fits in with the other publicly owned buildings there mentioned. The same general plan was apparently followed at the time the amendment was adopted as was employed when the ordinance was first passed. The conjunctive " and " is used throughout the original to connect the different character of buildings and places, and when the new matter was added it was preceded in the same manner by the like conjunctive. It would be idle to contend that the authorities are not as much in charge of the waterfronts as they are over the other buildings and places referred to in subdivision or class 2. If the preposition " of " had been inserted between the words " and all " following the word " amusement " the intent would be clearer, and it then would have

read " *and the authorities and persons having charge of all hospitals   *   *   *   and of all piers, bulkheads, etc.,   *   *   *   shall provide such means, etc.*" Can it be written into the ordinance or supplied by implication? Courts are not vested with the power to interpolate into the statute what should have been inserted by its framers. That is the general and well-settled rule. In *Matter of Deuel,* 116 App. Div. 512, it was said: "All statutes must be so construed as to give effect to the evident intention of the Legislature, and to prevent inconsistency, unreasonableness or unconstitutionality, it is permissible to ignore the mere letter of the statute, and even to disregard or to supply words obviously inserted or omitted by mistake." But whether the preposition is inserted or not, I am still of the opinion that the structures belong to the second division or class and that it was intended that the sprinkler device, if the fire commissioner decided on its installation, should be provided by the authorities or persons having charge of the waterfront. A senseless or frivolous purpose is not to be imputed to the lawmakers. Unless the amendment is bodily carried to the first class or division, as counsel for defendants suggest, or is given the effect indicated by me, it would lead to the meaningless and absurd result that the " piers, bulkheads, wharves, etc.," could be required to provide the sprinkler device. My conclusion is that the relator does not come within the first division and that the order is without validity. This finding saves the amendment from being condemned for uncertainty and at the same time obviates the necessity of passing upon the other questions raised. The motion to dismiss the writ and to confirm the determination of the board of standards and appeals is denied.

Motion denied.