[609 NYS2d 896]

101 FLEET PLACE ASSOCIATES, Appellant-Respondent, v NEW YORK TELEPHONE COMPANY et al., Respondents-Appellants.

First Department, April 7, 1994

### APPEARANCES OF COUNSEL

*Samuel P. Moulthrop* of counsel, Morristown, New Jersey *(Karen Patruno Sheehy* and *Kathleen D. West* with him on the brief; *Riker, Danzig, Scherer, Hyland & Perretti,* and *Stephen Garber,* Mineola, attorneys), for appellant-respondent.

*Carol R. Abramson* of counsel, New York City *(Stuart S. Sherman,* attorney), for New York Telephone Company, respondent-appellant.

### OPINION OF THE COURT

CARRO, J.

In this action for costs incurred to remedy damage to property caused by the leakage of gasoline from deteriorated underground storage tanks and connected piping, the plaintiff landlord 101 Fleet Place Associates (Fleet) appeals from so much of the orders of the Supreme Court, New York County (Lewis R. Friedman, J.), entered July 29 and September 2, 1993 (the identical disposition was inadvertently encompassed in two orders and entered twice), which denied Fleet's motion for partial summary judgment imposing liability upon defendant with respect to the first and sixth causes of action in the complaint. The defendant tenant New York Telephone Company (NYT) cross-appeals from so much of the same orders as denied its cross motion for summary judgment dismissing the complaint in its entirety.

In 1951 NYT entered into a lease agreement with the Lustbader Company, the former owner of the premises located at 101 Fleet Place in Brooklyn, pursuant to which the land-

lord was to construct a garage, according to NYT's specifications, primarily for the storage, repair and servicing of NYT's motor vehicles and related equipment. As here pertinent NYT's construction specifications required the landlord to "furnish and install," at the landlord's expense, five 550-gallon underground gasoline tanks, and floor drainage including an oil separator, which were to be located inside the building under the floor. The original 10-year lease was extended from time to time, the last extension covering the period March 14, 1983 through September 30, 1988. In 1985 Fleet purchased the property subject to the lease with NYT.

At the expiration of the last lease extension NYT vacated the premises. A New York Fire Department (NYFD) test of the underground tanks revealed gasoline leakage from the tanks and connected fill and vent pipes, all of which had severely deteriorated, and extensive soil contamination. The NYFD issued a violation order to NYT, and the New York State Department of Environmental Conservation (DEC) was contacted. NYT, in consultation with DEC, began to clean up the contamination, but its workers went out on strike. Accordingly Fleet completed the cleanup, and now seeks reimbursement and other damages related to the cleanup (see generally, Annotation, Tort Liability For Pollution From Underground Storage Tank, 5 ALR5th 1).

█ Fleet alleged in its complaint that it "was required by the New York Department of Environmental Conservation and applicable local, state, and federal requirements to install monitoring wells, to take samples, and to perform testing. In addition, plaintiff was required to remove the Tanks, excavate contaminated soil around the Tanks, and perform other remediation. All of the remediation undertaken by plaintiff has been approved by the New York State Department of Environmental Conservation." Two interrogatory responses by Fleet further confirmed that it was required to remove the tanks and perform all cleanup work "by New York statutes and regulations."

As here pertinent, the lease provides in paragraph twenty-second: "The landlord at his sole expense shall comply with all laws, orders and regulations of federal, state, county and with any proceeding of any public officer or officers, pursuant to law, which shall impose any violation, order or duty upon Landlord or Tenant with respect to demised premises or the use or occupation thereof." This broad provision unambiguously imposed upon Fleet an obligation at its sole expense to

remove the gasoline tanks and perform the cleanup. Accordingly we need not address whether another lease provision requiring Fleet to make "both exterior and interior structural repairs" applied to the gasoline tanks imbedded beneath the garage floor.* We do hold that a general lease provision requiring NYT to "keep and maintain the interior of the demised garage building in a good state of preservation and repair" cannot, in the absence of an explicit inclusion within this responsibility of repair or replacement of the gasoline tanks, override the specific provision of paragraph twenty-second set forth above.

■ Fleet's cause of action against NYT based upon New York State Navigation Law §§ 181 and 176 also cannot withstand NYT's cross motion for summary judgment. Even assuming that the statute is applicable, and that Fleet would be entitled to contribution from NYT under Navigation Law § 176 (8) for the costs of the cleanup, the parties nevertheless allocated ultimate responsibility as between themselves for such costs by the provision imposing them solely on the landlord, Fleet *(Olin Corp. v Consolidated Aluminum Corp.,* 5 F3d 10, 15-16 [2d Cir 1993] [applying New York law]; *Boyd Co. v Boston Gas Co.,* 992 F2d 401, 405 [1st Cir 1993]). In language arguably applicable to the legal relations of the parties herein, the court in *Olin* stated the following: "We acknowledge that this is a seemingly harsh result for a company that must pay for the cleanup of contamination that it apparently did not cause. However, we are unwilling to ignore the broad inclusive language of agreements freely entered into by two sophisticated parties. Parties should be able to rely on the terms of an agreement arrived at after arduous negotiations" (5 F3d, *supra,* at 16).

Accordingly, the order of the Supreme Court, New York County (Lewis R. Friedman, J.), entered September 2, 1993, should be modified, on the law, with costs, to grant the cross motion by defendant New York Telephone Company to dis-

---

* Modern commercial leases usually contain a covenant on the part of the *tenant* to comply with statutes and governmental orders at the tenant's expense, and difficult questions arise when the required compliance involves structural repairs of a permanent, substantial or unusual character *(see, e.g., Herald Sq. Realty Co. v Saks & Co.,* 215 NY 427). Here, there is no doubt as to Fleet's responsibility since the landlord was made financially responsible for the costs of governmental compliance and for structural repairs. The intention to shift to a tenant the financial burden for such major repairs should be plainly discoverable in the lease (2 Rasch, New York Landlord and Tenant §§ 19:21, 19:26, 19:31 [3d ed]).

miss the complaint, and otherwise affirmed. The appeal and cross appeal from the identical order entered July 29, 1993 should be dismissed as academic, without costs.

SULLIVAN, J. P., WALLACH, KUPFERMAN and TOM, JJ., concur.

Order, Supreme Court, New York County, entered September 2, 1993, unanimously modified, on the law, with costs, to grant the cross motion by defendant New York Telephone Company to dismiss the complaint, and otherwise affirmed. The appeal and cross appeal from the identical order of the same court and Justice, entered July 29, 1993, are dismissed as academic, without costs.