LOUIS SIMKIN, Plaintiff, *v.* MORRIS BLUM, Defendant.

Supreme Court, New York County, February 7, 1928.

**Landlord and tenant — lease — action for declaratory judgment to have determined plaintiff's rights under lease — lease stipulated that alterations be made at expense of tenant — violations were filed against premises requiring construction of passageway through ground floor and cutting away part of rear to provide stairway from lowest fire escape landing — lease required tenant to make structural alterations — changes were made necessary because of removal of existing fire escape which was encroachment on adjoining premises — plaintiff could not recover damages in counterclaim in summary proceedings to dispossess — action may be maintained — injunction restraining summary proceedings granted.**

The lease of premises to the plaintiff by the defendant provided that the plaintiff would at his own expense comply with all requirements of ordinances and orders

of public departments whether the same required structural changes or not. Violations were filed against the premises which called for the construction of a passageway through the ground floor and the cutting away of a part of the rear of the premises and the erection of a stairway from the lowest fire escape landing to the ground.

Construing the lease as a whole and taking into consideration the fact that the term was for ten years it was the intent of the parties that the plaintiff pay for all structural changes required by the public departments.

However, in this case the changes required were made necessary by the fact that the fire escape on the building when the plaintiff took possession encroached on adjoining premises which encroachment was removed by the owner of said premises. The plaintiff was justified in believing that the existing fire escape was lawfully usable and if the title failed in that respect the defendant is liable regardless of provisions in the lease.

The plaintiff is, therefore, entitled to maintain this action to have his rights declared and for consequential relief. The relief demanded is that the defendant bear the expenses of the changes and that the rent abate in part because of the fact that the changes will lessen the demised space. Those questions cannot be determined in summary proceedings to dispossess in the Municipal Court as they involve equitable relief. The plaintiff is entitled to an injunction against threatened summary proceedings.

ACTION by a lessee for a declaratory judgment to determine his rights under a lease, and motion to restrain defendant from instituting summary proceedings to dispossess pending the action.

*Hays, Podell & Shulman*, for the plaintiff.

*Isidore H. Levey*, for the defendant.

LEVY, J. Plaintiff is the lessee of the building No. 714 Lexington avenue, in the borough of Manhattan, under a written lease from the defendant, who is the owner of the property, for a term commencing September 1, 1923, and expiring August 31, 1933. Under a conditional limitation clause contained in the lease, the defendant on March 18, 1927, notified the plaintiff that by reason of his failure to comply with the violations of the fire department and to keep the premises in proper repair, the former elected to terminate the lease on March 28, 1927. The plaintiff has now brought an action for a declaratory judgment to determine his rights under the lease and for consequential relief authorized by rule 211 of the Rules of Civil Practice, and is seeking by this motion an injunction to restrain the defendant from instituting summary proceedings to recover possession of the premises pending the determination of this action.

The chief issue between the parties is as to the liability of the tenant to comply with certain structural alterations ordered by the fire department. Violations have been filed against the property calling for changes of structural character, namely, the

construction of a passageway through the ground floor and the cutting away of part of the rear premises in order to provide a stairway from the lowest landing to the ground. The landlord has attempted to put the burden of complying with these violations upon the tenant, and as the latter has refused to go on with that work, he has sent him the notice mentioned. The provisions of the lease require that the tenant " will, at its own cost and expense, conform to, promptly obey, carry out, observe, fulfill and perform all present and future requirements of work, and also all present and future ordinances, rules, regulations, recommendations, notices and requirements of Federal, State, Borough, Municipal and all legal or public authorities, and of every department, bureau, officers, division, sub-division, part and parcel of each and every of them, now or hereafter existing * * * and all present and future obligations, duties and responsibilities in relation to or connected with the said demised premises, or the sidewalks and curb in front thereof, or the building, appurtenances, appliances, utilities, erections or equipment or any part thereof which may at any time be thereon or therein, and/or the use or manner of use thereof, which may be imposed, ordered, and/or required after the commencement of the term."

This provision of the lease it is urged by the defendant does not require him to comply with structural changes ordered by the fire department. It is argued that an agreement of this kind does not obligate the defendant to pay for the structural repairs, and reference is made to *Warrin* v. *Haverty* (159 App. Div. 840) which apparently sustains such an inference. And further support is sought in *Younger* v. *Campbell* (177 App. Div. 403) in which a lease which obligated the tenant to comply with orders of governmental departments and to make repairs of every nature in and outside of the demised premises was held not to obligate him to pay for fire escapes which involved structural changes in the building by requiring the inclosure of stairways from cellar to roof with a wall of fire-retarding material. A careful reading of these authorities, together with the later decisions, does not support any general rule to the effect that in the absence of any reference to structural changes in a clause of this nature, the duty with regard to such necessarily devolves upon the landlord.

In *Cohen* v. *Margolies* (192 App. Div. 217), which definitely lays down what may be considered the modern rule, it was stated that the intention of the parties as to the scope of such a covenant must be ascertained from the provisions of the lease and the circumstances affecting the uses to which the building was to be put. In construing such a covenant, which was similar to the one under

consideration, the court considered the length of the time and many of the other provisions of the lease, and found that it obligated the tenants to do many things which ordinarily devolve upon the landlord, and considering all the various provisions of the lease in the foregoing light, it came to the conclusion that the duty to comply was upon the tenant and not upon the landlord. That case was affirmed in 232 New York, 584, upon the opinion below.

A study of this lease shows the following provisions pertinent to a solution of this question. In paragraph 5 it is said that the general intent of the lease is that " the lessee shall make all repairs, alterations or changes of every kind and nature that may be required to the premises, regardless of the extent thereof and whether the same be structural, ordinary, extraordinary or of any other nature, and regardless of how the same may be necessitated." And in paragraph 6 the understanding is again expressed that " the lessee shall have and hereby assumes all duties and obligations with relation to the demised premises and building and/or improvements that may hereafter be erected and/or standing thereon during the term of this lease, and also the maintenance and operation thereof, and also the use and manner of use thereof, as if the lessee be also the owner and lessor, so that no matter from what source arising, if anything shall be ordered or required to be done, or omitted to be done in, upon or about the said premises and/or the building and improvements thereon * * * that all shall be done and fulfilled at the sole expense and responsibility of the lessee and without any expense, liability or obligation whatsoever to or on the lessor." Paragraph 19 provides that the lessor " shall receive the fixed annual rent free from all taxes, charges, expenses, damages and deductions of every kind whatsoever." Paragraph 3 provides that the lessee will pay all taxes, ordinary as well as extraordinary, and also any assessments levied. Considering the additional fact that the lease was for a period of ten years, it may fairly be inferred that the general intent of the parties was that the expense of all changes or repairs, structural as well as others, devolved upon the tenant. Such a disposition would require a denial of the application for an injunction and would seem to justify the defendant's position that the plaintiff was in default in failing to comply with the order directing the alterations.

But the situation is complicated by one very important element. At the time of the execution of the lease, certain fire escapes existed at the rear of the building, substantially built and providing an exit to the ground. In November or December, 1923, the adjoining tenant cut away a portion of the fire escape reaching from the ground floor to the lowest landing, because it encroached on his

land, so that thereafter the only exit from the lowest landing was by means of a window, and all escape by way of the ground was cut off. Plaintiff protested against this and wrote a letter to the defendant notifying him that he would expect him to restore the fire escape at his own expense and comply with any orders of any municipal department in relation to the erection and installation of any fire escape in the premises; and he further informed him that payment of any further rent would be without waiver of any of plaintiff's rights and remedies in the matter. To this letter there was no reply. The defendant, however, relies upon a provision of clause 28 which reads " that the lessee has hired the premises after examination of their present condition and without any representations on the part of the lessor, or any of his agents." But this provision cannot absolve the defendant from responsibility for an encroachment of an important means of exit existing at the time of the execution of the lease. The plaintiff was justified in assuming that the fire escapes were legally upon defendant's property, or that he had a proper easement for their use. The failure of title in that respect is something, the consequences of which must be visited upon the landlord, regardless of any provisions of the lease which require the tenant to make all alterations of every sort, and regardless of the intention of the lease to relieve the landlord of any further expense with reference to the property.

The tenant is, therefore, entitled to maintain an action which will determine his rights in the premises, together with any consequential relief which is due him. To say that he can establish his claim for damages as a counterclaim in the summary proceedings is not entirely true. The relief demanded includes not only a requirement that the landlord bear the expense of complying with the order of the fire department, but also a claim for abatement of rent, by reason of the fact that the new structure will take away a part of the demised space. These questions cannot properly be disposed of by the Municipal Court as they involve in part claims for equitable relief. Nor can the stay of any threatened summary proceedings be seriously prejudicial to the landlord. All other duties under the lease devolving upon the tenant will continue as heretofore. The landlord will receive his rent without prejudice and the tenant will pay taxes and comply with the other provisions of the lease.

It must be noted that while the landlord has predicated his right to cancel the lease upon the failure to make other repairs as well as the non-compliance with the order of the fire department, the former do not seem to be of a substantial character. It may also

24

be that some or most of them are interconnected with the necessary substantial or structural repairs, and that phase should, therefore, not complicate the more important issue at this time.

The motion for an injunction is granted upon plaintiff's filing an undertaking in the sum of $1,000. Settle order.