No. 17,502.

ELL AND L. INVESTMENT COMPANY *v.* INTERNATIONAL TRUST COMPANY, ET AL.

(286 P. [2d] 338)

Decided July 18, 1955.   Rehearing denied August 8, 1955.

Mr. CARLE WHITEHEAD, Mr. ALBERT L. VOGL, Mr. WILLIAM F. REYNARD, for plaintiff in error.

Messrs. HUGHS & DORSEY, Mr. THOMAS KEELY, Mr. ALLAN R. PHIPPS, for defendants in error.

*En Banc.*

Mr. JUSTICE KNAUSS delivered the opinion of the Court.

PLAINTIFF in error, hereafter referred to as lessee, was plaintiff in the trial court. Defendants in error, hereafter referred to as lessors, were defendants in the trial court.

Lessee brought this action to obtain a declaratory judgment, fixing liability as between plaintiff and defendants for the cost of certain repairs, alterations and changes made by lessee on the leased premises occupied by it following notice and demand by the Denver Building Inspector that the structure on said premises be vacated and wrecked because the same was unsafe and a fire menace.

Trial to the court resulted in findings and judgment in favor of lessors, and lessee brings the cause here by writ of error.

The leased premises consisted of a two-story building constructed about 1890, at the corner of 17th and Larimer Streets, in Denver, Colorado. The premises were known as 1700-02-04 Larimer Street and 1221-1237 17th Street. The lease between the parties litigant, dated September 10, 1941, was for a term of twenty years. The rental reserved was $62.50 per month, and in addition thereto the lease under a paragraph entitled "Maintenance and Improvements" provided: "the lessors shall receive a *net annual rental of $750,* and that *all other expenses of every nature whatsoever* in connection with the demised premises, such expenses by way of illustration and without limitation being taxes, special improvement assessments, insurance premiums, *repairs, alterations and maintenance, water assessments,* heat and light, *shall be paid by the les-*

*see* and under no circumstances shall the lessors be required or called upon to expend any sums in connection with the *maintenance* of the demised premises during the term hereof." (Emphasis supplied).

The lease also provided: "that the lessors shall not in any way be liable for the expense of making any alterations, improvements or repairs of any nature whatsoever to the demised premises."

Lessee deposited with lessors the sum of five thousand dollars "to be held by the lessors in a separate fund, * * * and shall be disbursed by the lessors upon written order executed by the lessee to pay for repairs, alterations and remodeling of the demised premises at any time during the first five years of the term hereof."

Under date of July 16, 1946, a written agreement was executed by the parties, extending from five to seven years the period during which the five thousand dollars deposited by lessee would be applied to repairs, alterations or remodeling.

The lease also contained the usual covenant on the part of the lessee to keep the premises in good order and condition and surrender and deliver up the same in as good order and conditon as when entered upon, except ordinary wear.

For a number of years prior to the date of the lease in question Louis Minowitz operated a retail business, known as the Model Shoe and Clothing Company, in a portion of the demised premises. Mr. Minowitz was also the principal stockholder of plaintiff lessee. The record discloses that after the lease in question was entered into, the Model Shoe and Clothing Company continued to occupy the corner store and paid to lessee $200 per month as rent for the portion of the demised premises occupied by it.

On November 28, 1949, the city building inspector served notice upon lessors to vacate the premises because the "structure is unsafe * * * in a delapidated condition * * * and a fire menace." The premises were then examined by an architect who reported that the threatened

condemnation by the city was justified; that the situation could be corrected by the removal of the second floor, correcting some structural conditions in the lower floor and by doing some general cleaning. Later, and about May 9, 1950, the city building inspector served upon lessors a notice to "vacate and wreck same (the leased premises) within thirty days." On May 19, 1950, lessors duly advised lessee of the receipt of this notice, and on July 20, 1950, defendant International Trust Co. wrote to counsel for lessee that it had "no objection" to lessee making such alterations or improvements to the building "as may be necessary to bring said building into compliance with the building code," should lessee desire to do so, all without prejudice to the right of lessee to contend that it was the duty of lessors to pay for such repairs and improvements. Lessee removed the upper floor and made necessary repairs and alterations in the lower floor to meet the demands of the building inspector, all at a cost of $9,646.

During the term of the lease and before the changes and alterations now in controversy were made, lessee, in addition to other changes and alterations, replaced floor joists, and also strengthened the wall, which, like replacing the floor joists, was a structural repair. Lessee paid both of these items and was reimbursed from the five thousand dollar fund.

It is contended by counsel for lessee that under the record here made the tenant is not liable for the cost of structural alterations required by public authority.

■ Where, as here, the surrounding circumstances and the terms of the lease taken together show that it was the intention that the tenant should pay for the making of substantial alterations and improvements, the expense of alterations or improvements ordered by public authority fall on the tenant. 32 A. J. p. 670, section 786.

■ The intention of the parties as to the scope of such a covenant must be ascertained from the provisions of the lease and the circumstances affecting the uses to which

the building was to be put. *Cohen v. Margolies,* 182 N.Y.S. 442, *Simkin v. Blum,* 226 N.Y.S. 702, 51 C.J.S. p. 849.

Among other provisions of the lease was the following: "It is hereby mutually agreed between the parties hereto that the lessee will not make any alterations, changes or improvements in the demised premises *of a major nature or which shall change or affect the structural soundness of the demised premises without first having such alterations, improvements or repairs approved by the lessors.* It is specifically agreed between the parties hereto that the lessors shall not in any way be liable for the expense of making any alterations, improvements or repairs of *any nature whatsoever."*

■  After being advised that *"alterations of a major nature"* were required to save the building from destruction under orders of the building department, and after being specifically informed by lessors that they would not be held responsible for the expense thereof, the lessee chose to make them, and having done so is in no position to claim reimbursement from the lessors.

It is evident from the language employed and the circumstances appearing in the record, that the general intent of the parties was that the expense of all changes or repairs, structural as well as otherwise, in this old building, devolved on the tenant.

This, the lessee recognized when it made the structural repairs incident to strengthening the wall and replacing floor joists as above recited.

It is plain that when lessors turned over this ancient property to lessee for a nominal rental of $62.50 per month that lessors desired, and lessee agreed, that the $62.50 per month was exactly what the lease provided, to wit: a net amount to lessors, and that all expenses of repairing, altering, and maintaining the property were to be paid by lessee. Notwithstanding this property is located at the intersection of two heavily traveled streets in the city, lessors were willing to tie it up for twenty years at a very nominal rental; lessee understood, as well as did lessors, that

the structure would not stand indefinitely, and that within the twenty-year period it would require substantial alterations to make it safe for occupancy. From the language employed by the parties, and from the surrounding circumstances we hold the expense of making these alterations and changes made necessary to comply with the demand of the building inspector was an obligation assumed by the lessee.

The judgment of the trial court was correct, and it is accordingly affirmed.