SECOND UNITED CITIES REALTY CORPORATION, Respondent, v. PRICE & SCHUMACHER CO., INC., Appellant.

**Landlord and tenant — lease — provisions in lease that tenant shall make interior repairs and comply with requirements of building department — not required to pay for excavating cellar and building foundation and cellar walls as directed by building department after collapse of floor — liable to pay for restoring floor if it collapsed from negligent overloading — statement of cause of collapse in notice of superintendent of building not evidence of negligence.**

1. Provisions in a lease of a store that " all repairs made necessary to the interior of the premises hereby demised are to be made by the tenant " and " the said tenant further covenants and agrees that it will comply with all the requirements of the * * * building department," do not sustain a claim by the landlord that the tenant should pay for excavating a cellar and constructing foundation and cellar walls, the same having been required by the city building department after collapse of the store floor. The repairs were not to the interior of the leased premises but pertained to a part of the building not leased by the tenant and were of a structural nature requiring the owner to meet the cost thereof.

2. If the floor, reasonably safe, collapsed because of the tenant's negligence in overloading it, he is bound to repay the cost of restoring it to its original condition.   A statement in the notice of the superintendent of buildings to the owner that the floor collapsed under excessive weight is not evidence of negligence; at best it is a mere conclusion.   Such negligence may be proved, if possible, at a new trial.

*Second United Cities Realty Corp.* v. *Price & Schumacher Co.,* 214 App. Div. 806, reversed.

(Argued January 13, 1926; decided February 24, 1926.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 30, 1925, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*John M. O'Neill* and *Robert P. Orr* for appellant. Defendant was not obligated to do the work in question under the terms of the lease. (*Herald Square Realty Co.* v. *Saks & Co.,* 215 N. Y. 427; *Holden* v. *O'Brien,* 209 App. Div. 266; 240 N. Y. 14; *May* v. *Gillis,* 169 N. Y. 330; *Cohen* v. *Margolies,* 192 App. Div. 217; 232 N. Y. 584; *Warren* v. *Haverty,* 159 App. Div. 840; *Younger* v. *Campbell,* 177 App. Div. 403.)

*Sidney A. Clarkson* for respondent.   The defendant was required to do the work charged for. (*Markham* v. *Stevenson Brewing Co.,* 104 App. Div. 420; 111 App. Div. 178; 188 N. Y. 593; *Harder R. & C. Co.* v. *Lee,* 74 Misc. Rep. 436; *Jacobs* v. *McGuire,* 77 Misc. Rep. 119; *Bushwick Realty Co.* v. *Sanitary F. P. & C. Co.,* 129 App. Div. 533; *Deutsch* v. *Hoe Estate Co., Inc.,* 171 App. Div. 685.)

CRANE, J.   On January 3, 1922, the respondent leased to the appellant a certain store, No. 1421 Fulton street in the borough of Brooklyn for three years from December 15, 1921, at a yearly rent of $600 and " that proportion of any increase in the taxes on the building of which the premises herein described form a part, over those assessed for the year 1921, which the annual rent of said tenant

bears to the total annual rent of the entire building."
The leased premises consisted of the store floor in a two-
story frame building. The upper floor was occupied as
a residence with which the lessee had nothing to do.
The store was about twenty-five feet wide, thirty feet
deep, with an extension about thirty feet in depth.
There was no cellar under any part of the building.
Under the store proper was a space between the ground
and the floor. In some places this depth was four or
five feet, and at other places the dirt came within about
a foot of the floor. Wooden girders, resting on wooden
posts, supported the cross beams on which the store
floor was placed. There was no supporting wall on the
sides or in the rear. The appellant rented the store for
a tinsmith business.

On August 11, 1922, the floor of the store collapsed,
and the building department prohibited further use
thereof until the building was reconstructed in accordance
with its directions. The superintendent of buildings, in
his notification to the owner, specifying the defects of
construction, also stated that the floor had collapsed under
excessive weight. Whether the weight was excessive for
a properly constructed floor, or was excessive merely for
this particular floor, is not stated. No facts are given to
how what weight the floor could or should have sus-
tned. There was some evidence that the flooi beam
was rotten.

The plans of the building department required the
owner to reconstruct its house. To be specific, they
called for:

"installation of concrete footings 20″ x 12″, under front,
rear and westerly walls, and under six new Lally columns
— each 18 x 18″ x 12″; excavation of earth in cellar to
uniform depth of five feet; new 12″ brick walls on front,
rear and westerly side; installation of three 6″ Lally
columns in center of buildings; three 6″ Lally columns
under easterly upper wall; two iron I beams, one in cen-

ter and one under easterly upper wall, cross beams 3″ x 12″ 16″ over centers, and new flooring.″

Where there was no cellar the owner was required to construct one. This called for excavation — the digging of a cellar, also the construction of cellar walls, and the installation of iron girders. Brick walls were to be constructed on the front, rear and westerly side.

This work being done by the owner at the cost of $1,733.91, it has sued the tenant in this action to recover the amount, claiming that by the terms of the lease the tenant was required to do this work.

The lease stated: "All repairs made necessary to the interior of the premises hereby demised are to be made by the Tenant." It also contained the following general provision:

"And the said Tenant further covenants and agrees that it will comply with all the requirements of the Board of Health, Tenement House Department, Building Department, Department of Water Supply, Gas and Electricity, Police and Fire Departments, and Department of Fire Prevention, and other municipal authorities, and also of the Department of Labor of the State of New York, and that it will not create nor permit any nuisance in the premises hereby rented to the annoyance of neighboring occupants, and shall also promptly comply wit' and execute all rules, orders and regulations of the N/ York Board of Fire Underwriters."

Neither of these clauses sustain the plaintiff's *c*im. The repairs were not to the interior of the leased pr ses, that is, the store. The requirements of the uilding department pertained not to the store or the premises leased by the tenant to carry on the tinsmi' business, but to the cellar and foundation walls not l sed by the tenant. After the reconstruction, the own* had a substantially new building in part. The fo ndations were entirely changed, strengthened and made new. The frame superstructure remained the sane, but the cellar

[242 N. Y. 120] Opinion, per CRANE, J. [Feb.,

and side walls formed a new and substantial part of the building. Why should the tenant pay for this? The clauses of its lease did not require the tenant to make structural changes or to pay for rebuilding. The rent of the store was only $600 for a term of three years. The cost of these repairs or reconstruction equals within a few dollars the amount of the three years' rent. That such a liability was to be cast upon the tenant by this lease could hardly have been within the contemplation of the parties.

The construction of the cellar and the reconstruction of the foundations of this building were of a structural nature requiring the owner to meet the cost thereof. (*Herald Square Realty Co.* v. *Saks & Co.*, 215 N. Y. 427; *Holden* v. *O'Brien*, 209 App. Div. 266; affd., 240 N. Y. 560; *Cohen* v. *Margolies*, 192 App. Div. 217; affd., 232 N. Y. 584.)

If it were a fact that the floor, reasonably safe, collapsed because of the tenant's negligence in overloading it, he would be bound to repay the cost of restoring it to its original condition. The defendant gave some evidence that this cost would amount to about $470; the plaintiff gave no evidence on this point. The inspector's report is not evidence of negligence; at best it is a mere conclusion. However, the plaintiff should have a new trial ⟩ prove this negligence, if possible.

The judgments heretofore entered in the plaintiff's fa⟩ should, therefore, be reversed, and a new trial gran₁, with costs to abide the event.

HIS⟩CK, Ch. H., CARDOZO, POUND, McLAUGHLIN, ANDRE⟩ and LEHMAN, JJ., concur.

Judgm⟩ts reversed, etc.