**S. T. HSU, Appellant,**

v.

**Patsy THOMAS, Appellee.**

No. 11662.

District of Columbia Court of Appeals.

Submitted Dec. 21, 1977.

Decided May 23, 1978.

Irving M. Levine and Sidney Sherman, Washington, D. C., were on the brief for appellant at the time the case was submitted, but were subsequently granted leave to withdraw.

David V. Marshall, Washington, D. C., was on the brief for appellee.

Before KELLY, KERN and FERREN, Associate Judges.

PER CURIAM:

This appeal is from judgments entered in consolidated actions between the parties tried in the Landlord and Tenant Branch of Superior Court. First, appellee-tenant sued her landlord demanding that their rental agreement be set aside and the rent she had paid to the landlord be refunded to her. Appellant-landlord then brought an action against the tenant to recover unpaid rent and for possession of the leased premises based upon the same unpaid rent. Thereafter, the tenant filed a motion for partial summary judgment, seeking to establish her entitlement to a refund of the amount of rent she had paid her landlord. The trial court granted the motion, finding the rental agreement between the parties void because of the landlord's failure to obtain the required housing licenses before leasing the property.[1] Judgment was entered for the tenant in the amount of $1350, less the reasonable rental value of the premises which was to be determined at trial. The reasonable value of the premises was later found by the trial judge to be $500. Hence, the effect of the trial court's order below was a net judgment for the tenant in the sum of $850.

It is undisputed that the landlord had failed to obtain a certificate of occupancy or a housing license for the leased premises. Moreover, it was uncontroverted at trial that during the tenancy various defective

---

1. Any person operating an apartment house in the District of Columbia is required to have a certificate of occupancy (*see* D.C.Code 1973, § 5–422; D.C. Zoning Regs., § 8104.1) and a housing business license. (*See* D.C.Code 1973, §§ 47–2301, –2328; D.C. Housing Regs., § 3102.1.)

and unsatisfactory conditions existed on the premises. What was not clear from the record was whether these conditions were in violation of the Housing Code and whether they existed at the time of the lease agreement. As a consequence, the record in this case was remanded to the trial court to make those specific findings. The court, by amended order, found (1) that fourteen separate housing code violations existed during the period of the tenancy, and (2) that eight of these were in existence at the time the premises were leased to the tenant.[2]

■ It is unchallenged on this appeal that a tenant claiming Housing Code violations has the right to institute a separate claim against a landlord for rent paid in excess of the reasonable rental value of leased property. This jurisdiction has already recognized that where the tenant has been required to pay rent into the court registry pending judicial settlement of his or her rental obligation, the tenant can recover any excess paid when the court enters final judgment. *Javins v. First National Realty Corp.*, 138 U.S.App.D.C. 369, 381 n. 67, 428 F.2d 1071, 1083 n. 67, *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970). And we think it only proper that if the tenant has paid the rent stipulated in the lease and the landlord has defaulted, the tenant is entitled to sue the landlord for that amount in excess of the reasonable rental value of the leased premises. This separate judicial proceeding establishes the proper amount of the abated rent for the period of the landlord's default. Restatement (Second) of Property § 11.1, Comment b (1977). *See also Winn v. Sampson Construction Co.*, 194 Kan. 136, 393 P.2d 272 (1965); *Meinken v. Levinson*, 239 App. Div. 382, 267 N.Y.S. 612 (1933).

■ As to the merits of the landlord's argument on appeal, in *Brown v. Southall Realty Company*, D.C.App., 237 A.2d 834 (1968), this court held that if a landlord knowingly leases an uninhabitable dwelling in contravention of the Housing Regulations which set out the minimum standards of repair and sanitation, the rental agreement is void. In addition, § 2902.1(b) of the Housing Regulations provides that a rental agreement shall be rendered void if subsequent to the inception of the tenancy, habitation becomes unsafe or unsanitary by reason of violations of the Housing Code and such violations are not corrected in a timely fashion.[3] In the instant case, Housing Code violations existed from the outset of the tenancy, and were never remedied. Accordingly, the tenant was responsible for only the reasonable rental value of the premises. *William J. Davis, Inc. v. Slade*, D.C.App., 271 A.2d 412 (1970).[4]

*Affirmed.*

---

**2.** The following violations were found to have existed:

1. Intermittent supply of heat and hot water.
2. Broken front door lock.
3. Collapsing kitchen ceiling plaster.
4. Broken oven.
5. Broken window glass in both bedrooms.
6. Roach infestation throughout the apartment.
7. Broken refrigerator.
8. Running toilet plumbing.
9. Broken floor tile in the bathroom.
10. Broken window closure mechanisms in bedrooms.
11. Peeling paint and loose plaster in the bedrooms.
12. Leaking kitchen faucet.
13. Hole under sink.
14. Hole in ceiling of right bedroom which caused flooding when it rained.

Violations six through thirteen were found to be in existence at the time the lease agreement was entered into by the parties.

**3.** *See* Washington, D.C. Housing Regs., § 2902.-1(b) (1970).

**4.** We therefore need not consider the relevance of the landlord's additional failure to obtain a certificate of occupancy or housing license for the leased premises.