Frederick Bubeck and Charles H. Guerin, Copartners Doing Business under the Firm Name of Bubeck & Guerin, Respondents, *v.* The Farmers' Loan and Trust Company, as Trustee under the Will of Alexander Roux, Deceased, Appellant.

First Department, December 21, 1917.

**Landlord and tenant — covenant of tenant to make repairs except specified structural changes — when cost of changes ordered by Labor Department falls on tenant.**

Where a lease in express terms required the lessee to comply with all the requirements of the municipal and public authorities and to execute all orders of the fire underwriters in respect to the demised premises and to make all repairs to the building at his own cost and expense, except the remedying of structural defects such as replacing the main walls, foundations, or the roof, the cost of complying with an order of the State Labor Department requiring additional exits, screening of closets, the placing of gates on elevator openings and the inclosing of all interior stairways serving as exits, landings, platforms and passageways connected therewith, with fireproof materials, etc., falls upon the tenant, and not upon the landlord.

*It seems,* that in the absence of such express stipulations in the lease the inclosing of stairways would be a structural change chargeable to the landlord.

Appeal by the defendant, The Farmers' Loan and Trust Company, as trustee, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on or about the 7th day of August, 1917, as resettled by an order dated the 10th day of September, 1917.

The order appealed from overruled defendant's demurrer to the complaint.

*Edward H. Blanc* of counsel [*James F. Horan* with him on the brief], *Geller, Rolston & Horan,* attorneys, for the appellant.

*Vance Hewitt* of counsel [*Enos S. Booth,* attorney], for the respondents.

DOWLING, J.:

This action is brought to recover the sum of $2,192, being the amount disbursed by plaintiffs in complying with certain orders of the State Department of Labor. On February 25, 1909, plaintiffs entered into a written lease of the entire building known as Nos. 161–163 West Eighteenth street, New York city, being forty feet wide and six stories high. The term of the hiring was from May 1, 1909, until February 1, 1919, at a graduated rental, beginning with $5,500 per annum. The building was leased to be " used or occupied only for the business of cabinet makers and wood workers," and defendant agreed to make certain specified repairs at or before the beginning of the lease. The lease provided that " the premises hereby demised are also leased on these further covenants and conditions," one of which was: " That the lessee shall promptly perform and observe all lawful regulations and requirements of the municipal and other public authorities, and shall also promptly comply with and execute all rules, orders and regulations of the New York Board of Fire Underwriters in respect to the demised premises, and the use thereof, and the occupants therein, except any orders to remedy structural defects, such as the replacing of main walls or main supports of foundations or the main structure of the roof." Another covenant was: " The lessee agrees that during the term hereby demised they [*sic*] will make all repairs to said building both inside and outside at their own cost and expense, with the exception of repairs necessary to remedy structural defects; such as the replacing of main walls or main supports of foundations or the main structure of the roof."

Plaintiffs entered into possession of the demised premises. On July 26, 1915, the Department of Labor of the State of New York duly issued two orders for the doing of certain work upon these premises, then being used for manufacturing purposes under the terms of the lease. These orders were issued to plaintiffs as lessees and defendant was duly notified thereof, but refused to comply therewith. One of the plaintiffs having been arrested for non-compliance with the order, and neither landlord nor tenant being willing to concede liability to comply with the orders, it was agreed between them that the work should be done under plaintiffs' direction, after

bids therefor had been approved by defendant, and that plaintiffs should pay the bills for the work and the question of liability be determined thereafter. Hence this action was brought to recover back the amounts so paid by plaintiffs. The two orders in question call for four specific classes of work to be done. Items 2, 3 and 4 (the aggregate cost of which was $407) quite clearly involve no structural changes in the demised premises and are properly chargeable against the tenant. They require (2) additional means of exit; (3) screening closets; (4) self-closing gates at the elevator openings. Item 1, quite as clearly, does involve a structural change. The order directs:

" 1. Enclose all interior stairways serving as a required means of exit and the landings, platforms and passageways connecting therewith on all sides with partitions of fire-resisting material extending continuously from the basement to three feet above the roof. All openings to said partitions are to be provided with self-closing doors constructed of fire-resisting material (20 days)."

The cost of complying with this direction was $1,785. A requirement that an inclosure of fire-resisting material shall be provided around an interior stairway, from basement to roof, is a structural change, for which ordinarily the landlord is liable, and not the tenant. (*Younger* v. *Campbell,* 177 App. Div. 403.) But in the case at bar the tenants have agreed that they will " perform and observe all lawful regulations and requirements " of the public authorities, and then have defined what their liability is, by excepting therefrom certain specific structural changes. That is, the tenants have bound themselves under the terms of the lease in question, not only to comply with such orders of the public authorities as require minor changes, or changes due to the nature of the business carried on in the factory, but have bound themselves as well to comply with all orders requiring structural changes, save such as are specifically exempted from their agreement, viz., replacing main walls or main supports of foundations, or the main structure of the roof. That this language was deliberately employed, with a full knowledge of its effect and purpose, is shown by its repetition in the clause regarding repairs, wherein the lessees agreed to make all

repairs to the building, inside and outside, " with the exception of repairs necessary to remedy structural defects, such as the replacing of main walls or main supports of foundations, or the main structure of the roof." Thus a consistent policy was agreed upon, by which the lessees should comply with all orders of the public authorities or the New York Board of Fire Underwriters, and make all repairs as well, whether the orders or repairs involved non-structural or structural changes, save only such orders or repairs as involved (1) replacing main walls, (2) replacing main supports of foundations, or (3) replacing the main structure of the roof. The last three classes of changes, whether involved in orders or repairs, were to be at the charge of the landlord. As the inclosure of an inner stairway with fire-resisting material is not in one of the three classes of changes specified, nor in any way analogous thereto, it follows that the cost thereof must be borne by the tenants and not by the landlord. Therefore, since none of the work embraced within the scope of the orders in question was, under the terms of the lease, assumed or agreed to be done by the landlord, but on the contrary all the work done, was, by the provisions of the lease, such as was properly chargeable to the tenants, the complaint herein sets forth no cause of action against the defendants, and the demurrer thereto was properly interposed.

The order appealed from is reversed, with ten dollars costs and disbursements, the motion to overrule the demurrer is denied, with ten dollars costs, and said demurrer is sustained.

CLARKE, P. J., LAUGHLIN, SCOTT and SHEARN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs, and demurrer suatained.