DAVIS BROS. REALTY CORPORATION, INC., Landlord Respondent, v. CHARLES E. HARTE, Doing Business as the MUTUAL TOWEL SUPPLY COMPANY, Tenant, Appellant.

DAVIS BROS. REALTY CORPORATION, INC., Landlord, Respondent, v. GEORGE W. BAYLIS and ALBERT E. FROST, a Copartnership Doing Business under the Name of GEORGE W. BAYLIS & COMPANY, Tenants, Appellants.

(Supreme Court, Appellate Term, First Department, June, 1920.)

Summary proceedings — when petition dismissed — landlord and tenant — lease — Greater New York Charter, §§ 775(6), 776-a.

> Where separate lofts in a building in the city of New York, of which the landlord retains possession and control, are let to separate tenants, the words " said premises " in a provision of their lease that they shall promptly comply with and execute all lawful orders and regulations of all lawful authorities relating to said premises under penalty of forfeiture and damages, means the portion of the entire building covered by the particular lease of the individual tenant.   (P. 476.)
>
> Where orders of the fire and building departments of said city impose a scheme of improvement as to fire escapes and hoistways applied impartially to the entire building, such provision of the lease imposes no obligation in relation thereto upon the respective tenants.
>
> Section 776-a of the Greater New York charter, which relates only to owners or lessees of an entire building, read in connection with section 775(6) of the charter, held not to apply in the present case and the final order in favor of the landlord in proceedings to dispossess the tenant for failure to comply with the orders of said city departments will be reversed and the petition dismissed.

APPEAL by tenants from a final order in dispossess proceedings entered in the Municipal Court of the city of New York, borough of Manhattan, first district.

Appellate Term, First Department, June, 1920. [Vol. 112.

Dean, King, Tracy & Smith (William J. Smith, of counsel), for appellants.

Epstein & Brothers (Jesse S. Epstein, of counsel), for respondent.

BIJUR, J. These proceedings are brought because of the failure of the tenants to observe orders of the fire and building departments of the city of New York.

The leases of the respective tenants provide that they shall " promptly comply with and execute all lawful orders and regulations of the Board of Health, Police Department and City Corporation, or other lawful authorities relating to said premises, under the like penalty and damages." The penalty referred to is " forfeiture."

The lease to tenant Baylis covers the three upper lofts of the building; the lease to Harte the first loft. The building consists of a cellar and five stories. The nature or extent of the tenancy of the remainder of the building is not disclosed by the record.

The usual question concerning the jurisdiction of the Municipal Court to entertain dispossess proceedings is probably not present in this case, in view of the reference, in the orders for the repairs, to the Labor Law. Section 94 of that law probably applies, and expressly authorizes summary proceedings.

I pass over minor questions that arise in the case because from the nature of the work required to be done by the respective departmental orders I believe that the provisions of the leases place no obligation of compliance upon the tenants. The breach alleged in the petition is of a requirement " to provide doors to the balconies at least 2 feet by 6 feet, windows on courts should be fire-proof and self-closing. * * * The hoistway must be made safe forthwith by having the hoistway enclosed by a substantial vertical enclosure

not less than 6 feet high, where there is no opening for loading purposes. On all other sides gates or doors must be provided. Such enclosure may be made of the following materials; mesh work, grill work or slatted partitions, wire mesh not less than No. 10 U. S. Gauge or No. 13 U. S. expanded metal, or grill work with not more than 1½" space between members, except, where plain straight bars are used the space must not exceed 1 inch or wood slats not less than ⅜ thick, 1 inch between slats.''

It seems to me to be self-evident that where separate rooms, apartments or lofts in a building owned by a landlord are let to separate tenants for their several respective uses, the question of the application of a clause in a lease like the one here involved is entirely different from that presented in a case of the lease of an entire building. In the latter class of cases a distinction has been drawn between structural changes, *i.e.,* changes amounting to what is equivalent to a reconstruction of the buildings and mere repairs or superficial alterations. See for example *Bubeck* v. *Farmers' Loan & Trust Co.,* 180 App. Div. 542; *Deutsch* v. *Hoe Estate Co., Inc.,* 174 id. 685; *Harder Realty & Constr. Co.* v. *Lee,* 74 Misc. Rep. 436; *Jacobs* v. *McGuire,* 77 id. 119, recently approved in *Cohen* v. *Margolies,* 107 id. 480; affd., App. Term, Nov., 1919; affd., 192 App. Div. 217. There can be no doubt that the covenant of the tenant of a whole building is within the limitation above described, to do all that which the owner himself is required by the appropriate department to do.

On the other hand, in the instant case we have separate tenants of separate lofts, and it may be, tenants of separate apartments or even of separate rooms, while the landlord retains possession and control of the building as a whole. True the covenant provides that

the tenants will comply with all lawful orders *relating to said premises.* The words " said premises " must either mean the entire building or the portion covered by the particular lease of the individual tenant. I think in the context it means the latter. The former construction would be manifestly absurd since no one will claim, and plaintiff here does not,— that each tenant of a part of the building, however small, agreed to do the entire work on the whole building. Moreover, the context indicates that the words were intended to refer to the premises covered by each separate lease. We are then confronted with the question of what is meant by " orders relating to the premises " of each lessee. In one sense, of course, any order regarding the building relates to the premises of each lessee, since each lessee has a certain interest in the entire building, but manifestly that could not have been the meaning of the draftsman; in that case we would simply be back to the proposition that each tenant would thus have agreed to do all the work ordered for the entire building; for the covenant studiously avoids imposing upon each tenant the obligation to perform any part, portion or proportion of the work.

It is clear that the orders involved in the instant case do not refer to the premises of the particular lessee only. They impose a scheme of improvement as to fire escapes and hoistways applied impartially to the entire building. Respondent has indeed recognized the difficulty,— unconsciously it may be,— for in its notice to the tenants it says: " Take notice that the Fire Department demands prompt compliance *upon that portion of the premises as 47 Warren now occupied by you* with the requirements, etc." But the orders of the department require nothing of the kind. They say nothing about any portion of the premises occupied by appellants, or by anyone else. On the contrary,

they are entitled: " Re: Premises 47 Warren Street; "
and again refer to the passenger elevator " in the
building situate," etc.  It is quite apparent that the
landlord has taken the liberty of changing the order
of the departments so as to agree with its own desired
interpretation of the covenant of the lessees.  There
is, moreover, nothing in the lease from which it can be
determined how either the work or the expense thereof
is to be apportioned.  The respective parties might,
of course, contract in any agreeable terms, but in the
absence of such a, contract, how can we imply a cove-
nant to do a part of the work or pay a proportion of
the expense?  By what token, standard or measure
shall the work be physically apportioned; according to
the premises upon which a part or parts of it may be
done or (as in the case of a fire escape) adjacent to
which it may be situated,— or shall the expense be
apportioned according to the lateral floor space or
height or agreed annual rental or actual rental value at
the time or benefit to the particular portion of the
premises leased; and may we take into consideration
what use by what particular tenant of his portion of
the premises has possibly caused the order to be issued?
And to cap the climax, when we realize how these vari-
ous elements may be inter-related, as for example, that
the tenant of a small part which is undesirable may
under present conditions be paying a very much higher
rental, both absolutely and proportionately, than the
tenant of a very much larger and more desirable space,
we reach complications which indicate that it is im-
possible to imply a covenant that will be practically
operable, and that nothing but the expressed agree-
ment of the parties would suffice to warrant our hold-
ing that the tenant had agreed to do any part or pro-
portion of the work or pay any part or proportion of
the expenses, and if so what proportion.

In a recent case in the Appellate Term in the Second Department (*Williamsburg Power Co.* v. *Shotten,* 97 Misc. Rep. 716) it was held that under a somewhat similar covenant the respective tenants were obliged to repay the landlord their appropriate proportion of the expense; but the question which I am suggesting was practically removed from the consideration of the court by the fact (recited in the opinion at page 241) that " the defendants expressly stipulate that if they are liable, the amount which the plaintiff has sued for represents *their proper share* of the entire expense."

In the same case reference is made to certain sections of the Greater New York charter, and in particular section 776a, which reads: " The expenses attending the execution of any and all orders duly made by the department shall respectively be a several and joint personal charge against each of the owners or part owners, and each of the lessees and occupants of the building, structure, vessel, enclosure, place or premises to which said order relates, and in respect of which said expenses were incurred; and also against every person or body who was by law or contract bound to do that in regard to such building, structure, vessel, enclosure, place or premises which said order requires, and said expenses shall also be a lien on all rent and compensation due, or to grow due, for the use of any building, structure, vessel, enclosure, place or premises, or any part thereof, to which said order relates, and in respect of which said expenses were incurred."

As I read the language of this section, it relates only to owners or lessees of an entire building. It places no obligation upon either the owner or lessee of a part of a building. It does refer to the part owner of a building. It also imposes as against the landlord a lien on all rent for the use of any building or any

Davis Bros. Realty Corporation, Inc., *v.* Harte. 479

Misc.]    Appellate Term, First Department, June, 1920.

part thereof, but that is quite a different matter. Furthermore, the context, as for example section 775, subdivision 6, indicates that the orders may be addressed to the owners or lessees of the entire building but not to a lessee of a part of the building. Manifestly, it would be absurd to provide that an order for the installation of a fire sprinkler system or of a fire alarm system or a system of fire escapes on a vast building covering thousands of square feet and many stories in height could legally be delivered to the lessee of a single room.

Finally, it seems to me to be apparent that whatever the interpretation of the statute, it can by no possible theory of construction be held to enlarge the express covenant of the parties. Practical considerations also force themselves upon our attention. How could one reasonably expect a dozen different lessees of different parts of a building to co-operate successfully in constructing a piece of work relating only to the building as a whole and affecting all its parts. This difficulty might be met by a covenant to pay a fixed or ascertainable proportion of the entire expense, but no such covenant appears in the lease in the instant case. There is no covenant to pay at all, and certainly none to pay any proportion fixed or ascertainable or otherwise.

It is true that in a somewhat similar case in this department (*Ward* v. *Schwartz*, 161 N. Y. Supp. 814) two of my colleagues were of opinion that while the complaint should be dismissed, it should not be upon the merits. They indicated that the phrase there discussed, namely, " applicable to said premises and appurtenances " might be regarded as ambiguous, and " that the intent of the contracting parties might be established by competent proof." My own opinion in that case was to the contrary, as it is now. But assum-

ing, as I necessarily must, that this decision was correct as applied to the circumstances there appearing, it does not help us in the instant case where no ambiguity appears and no facts are suggested by respondent other than those presented in the record before us by which any ambiguity if it existed could be resolved.

In my opinion the covenant in the instant case may have a limited application to orders which require some detail of work to be performed upon the premises of a particular lessee and confined to those premises exclusively, but the limitations of such application need not be here determined. Suffice it that the order here considered related to the building as a whole and that the covenant imposed no obligation in relation thereto upon the appellants.

The final order should, therefore, be reversed, with costs, and the petition dismissed.

DELEHANTY and WAGNER, JJ., concur.

Final order reversed, with costs.