## 10 Suf Realty, Inc., Landlord, *v.* Irving Fins et al., Doing Business as Fins Brothers, Tenants.

Municipal Court of the City of New York, Borough of Manhattan, October 17, 1951.

*Louis C. Fieland* for landlord.

*Milton Gelman* for tenants.

SCHWEITZER, J. Petitioner seeks possession of the second floor of premises No. 13–15 Hester Street, in the borough of Manhattan, leased by the tenant under an agreement commencing December 1, 1948, and expiring November 30, 1951, with an option granted to the tenant to renew for an additional period of three years. The tenant agreed to use the demised premises " for the manufacture of dresses and ladies' sportswear."

On September 5, 1951, the landlord informed the tenant, by letter, that it had received a summons for failing to provide " an interior fire alarm system " and demanded that the tenant notify the landlord in writing no later than September 11, 1951, of the fact that they have commenced or completed the installation of such system in conformance with a previously exhibited fire alarm layout. Said letter contained a further provision to the effect that upon failure of the tenant to comply with the directions contained in the fire department direction, that the landlord elected to terminate the tenancy as of September 11, 1951. The aforesaid notice was apparently sent in conformance with the provisions of paragraph 23 of the lease, although the petition itself is significantly lacking in any allegation setting forth that the said lease did contain a provision providing for a conditional limitation (*Fredson Realty Corp.* v. *Silverstein,* 76 N. Y. S. 2d 612).

The grounds for dispossession set forth in the petition is predicated upon the fact that the " demised premises are used and occupied by the said tenant unlawfully and for an illegal business, and in violation of section 279 of the Labor Law of the State of New York ".

In substance, the aforesaid section provides that factory buildings over two stories in height, in which there are more than twenty-five persons employed above the ground floor, shall be equipped " by the owner thereof, with a fire alarm system having a sufficient number of signals clearly audible to all occupants of the building, and so arranged as to permit the sounding of all the alarms within the building whenever the alarm is sounded in any portion thereof." The same

section further provides that such system shall be maintained in good working order.

On May 14, 1951, the fire department of the City of New York issued an order addressed to the owner or owners of the building requiring them within thirty days from the date of service of such order to "install an adequate electrical closing circuit interior fire alarm system in accordance with the rules of the Board of Standards and Appeals, and the enclosed approved layout, Sec. 279, Labor Law."

The testimony established that the premises above the first floor consisted of these tenants, above which there is a printing establishment employing from four to six persons. The number of persons employed on the demised premises, which is the subject matter of these proceedings, varies depending on the season of the tenant's business, and it was established, without dispute, that there are substantial periods of time when the number of employees above the first floor did not exceed twenty-five.

An inspector from the fire department testified with respect to the physical conditions observed by him subsequent to the issuance of the departmental directive and stated that proper compliance with section 279 would entail the physical entering into of each floor of the premises occupied by all tenants including the basement for the purpose of installing and maintaining the gongs and signal control boards. As far back as October 13, 1950, the landlord had received the approved interior fire alarm layout referred to in the order, which contemplates construction and maintenance of an inner and outer installation. No action whatsoever was taken by this landlord to comply with such fire department order.

The said order by its very terms also provided for an adequate appeal within thirty days *by the owner* to the Board of Standards and Appeals, but no such appeal was ever taken.

At the time of the execution of the lease, the evidence further established that the landlord was shown a plan of the machinery which the tenant intended to install on the premises (paragraph 39 of the lease), and it may reasonably be inferred that it knew or should have known of the number of employees to be hired by the tenant. Of particular significance is the further fact that compliance by the landlord entailed a comparatively simple proposition, involving an expenditure not exceeding $700. There was nothing in the evidence further to indicate that it was structurally impossible for the landlord to comply,

or that the expenditure of such amount was economically unfeasible. The landlord's right to terminate the lease and to gain possession must necessarily depend upon an interpretation of section 8 in said lease, which provides '' that the tenant shall comply with all requirements of all laws, orders, ordinances and regulations of the Federal, State, County and Municipal authorities and with any directions, pursuant to law, of any public officer or officers, which shall impose any duty upon the landlord or the tenant with *respect to the demised premises,* or use or occupation thereof ''. (Italics ours.)

Certainly, if the tenant is obligated under such covenant to make the aforesaid installation throughout the entire building, then it was for failure to do so that rendered the use of his premises unlawful within the provision of subdivision 5 of section 1410 of the Civil Practice Act. On the other hand, if it is the landlord's obligation to comply with the fire department directive then its failure to comply cannot be made the basis for transferring a perfectly legitimate business into an unlawful one.

The law is well settled that leases like other contracts must be given a reasonable interpretation (one that will carry out the fair intention of the parties thereto). (*May* v. *Gillis,* 169 N. Y. 330.) The obligation to install the fire alarm system evolves on the owner by the very provisions of the statute. If that obligation is to be shifted to the tenant by the provisions of paragraph 8 of the lease, then the '' warrant for the change must be clearly discernible in the lease ''. (*Herald Square Realty Co.* v. *Saks & Co.,* 215 N. Y. 427, 432.) There is nothing in the instant lease nor in the circumstances surrounding its execution to indicate such intent. On the contrary it would appear that paragraph 36 indicates an intent of the parties to restrict the tenant's obligation to repair to the demised premises only, and specifically recites that '' if any of the foregoing provisions of this lease conflict in any way with the terms of this paragraph, the terms of this paragraph shall prevail.''

The determinative factors, however, rest in the fact that these tenants leased only a *part of the premises,* and for a comparatively short term. As stated by McAdam in his treatise on Landlord and Tenant, referring to a construction of the very clause in question, '' The covenant must be construed with reference to the subject-matter, whether the demise is of the entire building or only part of it, for a long or a short term ''. (1 McAdam Landlord and Tenant [5th ed.], § 145, p. 672.)

The compliance covenant in the instant lease had already been the subject of judicial interpretation, even insofar as it pertains to the tenant's obligation to comply with a fire department directive to install a fire alarm system. In *Ward* v. *Schwartz* (161 N. Y. S. 814) the tenant leased three floors of a building. The landlord reserved to himself a store and basement. The lease contained a clause requiring the tenant to "observe and comply with, and be responsible for * * * all rules, regulations, and requirements of the * * * Fire Department of the City of New York * * *, except structural changes or alterations * * * applicable to the said premises and appurtenances". The landlord was served with an order from the fire department to "provide an adequate interior electric fire alarm system, with bells or gongs, for the entire building". The landlord transmitted this order to the tenants, requesting them to comply therewith and upon failure to do so the landlord installed the system and in this action sought to recover the sum of $235 expended by them in con nection with the installation. The lower court dismissed the complaint holding that no further obligation evolved upon the tenant defendant since they occupied only a part of the building. The majority of the Appellate Term in the first department modified the judgment only to the extent of striking out the words "on the merits", holding in effect that the landlord failed to establish the extent of the expense necessarily incurred by him in installing the alarm system in that portion of the building occupied by the tenant. The dissent by Judge BIJUR held in effect that under no circumstances could the landlord recover any portion of the expense from a tenant of a part of an entire building.

A few years later, Judge BIJUR writing for a unanimous Appellate Term court in this department again had occasion to interpret a similar compliance covenant insofar as it bound a tenant of a part of a building. The court there stated: "It seems to me to be self-evident that where separate rooms, apartments or lofts in a building owned by a landlord are let to separate tenants for their several respective uses, the question of the application of a clause in a lease like the one here involved is entirely different from that presented in a case of the lease of an entire building. * * * On the other hand, in the instant case we have separate tenants of separate lofts, and it may be, tenants of separate apartments or even of separate rooms, while the landlord retains possession and control of

the building as a whole. True the covenant provides that the tenants will comply with all lawful orders *relating to said premises*. The words ' said premises ' must either mean the entire building or the portion covered by the particular lease of the individual tenant. I think in the context it means the latter. The former construction would be manifestly absurd since no one will claim, and plaintiff here does not — that each tenant of a part of the building, however small, agreed to do the entire work on the whole building. Moreover, the context indicates that the words were intended to refer to the premises covered by each separate lease.'' (*David Bros. Realty Corp.* v. *Harte,* 112 Misc. 473, 475–476, affd. 195 App. Div. 403.)

Applying the principle enunciated in this case, it could well be argued that this tenant would not be responsible for any part of the installation costs, since the fire department order imposes a scheme of improvement applying impartially through the entire building. This very issue of proportionate liability of a lessee of a part of a building for the installation of a fire alarm system throughout the entire building, where tenant's lease contained a similar compliance covenant, was raised in the case of *Williamsburg Power Co.* v. *Shotten* (97 Misc. 716, App. Term, 2d Dept.). The court there held (p. 721) that each defendant was responsible '' for their proportionate share of the stipulated expense of compliance with the order of the fire department.'' In this case also the court drew a sharp distinction between the liability of a lessee of a part of the building and a tenant of an entire building, saying (p. 718) : '' If the defendants were tenants of the entire building, instead of only one loft therein, this controversy would probably not have arisen. The law is well settled that if a tenant covenant in the lease to comply with and execute all orders of the boards of health, fire, buildings, *etc.* during the term, at his own expense, he assumes the obligation to comply therewith, and on his failure so to comply, after request from the landlord, the landlord may have the order complied with and recover the amount expended therefor from the tenant. *Hull* v. *Burns,* 17 Abb. N. C. 317; *Buhler* v. *Gibbons,* 3 N. Y. Supp. 815; *Seymour* v. *Picus,* 9 Misc. Rep. 48.'' However, it is extremely doubtful if the doctrine of pro tanto liability would even be followed in the first department in view of the decision in *Davis* v. *Harte* (*supra*) as the court there discussed at length the difficulties that would be involved in proportioning expenses. This difficulty, however, was removed in the *Williamsburg*

case by a concession of the amounts of such proportionate liability.

The cases relied upon by the landlord in its brief are distinguishable, primarily because they involve leases of the entire premises and are not inconsistent with the principles stated herein.

It would be judicially unconscionable to characterize the tenant's occupation of the premises as " illegal ", since it was rendered so only because of the landlord's breach of its own obligation. The inequity of forfeiting a tenant's lease in the light of all of the facts is so patent as to warrant a summary dismissal of the landlord's application for possession.

Final order for the tenant, dismissing the petition on the merits.