Isidor Wasservogel, Spec. Ref.
Plaintiff seeks a decree enjoining defendant, her landlord, from commencing any action or proceeding or continuing with any such action or proceeding to secure possession of the premises occupied by her in alleged violation of a certificate of occupancy and directing defendant “ to cooperate ” with plaintiff in making an appropriate application for the amendment of such certificate of occupancy. Defendant’s Municipal Court summary proceeding to dispossess plaintiff has been consolidated for trial with the instant action,
*1033 Plaintiff, a statutory tenant, has occupied the fifth floor of premises No. 44 East 52nd Street, New York City, as a women’s specialty shop since October, 1948. On or about March 30,1957, the Department of Housing and Buildings caused a notice of violation to be filed against such premises on the ground, among others, that the space occupied by plaintiff was being used for purposes other than those permitted by the certificate of occupancy. It was the department’s contention that the commercial use of such space violated the residential provisions of the certificate of occupancy issued to the owner of the building.
The certificate of occupancy permits various portions of the building to be used for both business and residential purposes. Plaintiff’s premises, however, are restricted solely to residential use. The building, which is in a retail use district, was acquired by defendant on September 15, 1958, with knowledge of the existing violation. Plaintiff had no such knowledge until September, 1958, when she was first apprised of the violation by defendant. On September 22, 1958, defendant requested plaintiff to discontinue her present use of the premises ‘ ‘ within five days ” and by further notice given on or about October 8, 1958, defendant elected to terminate the tenancy. Thereafter, defendant instituted a summary proceeding to recover possession of plaintiff’s premises based upon the alleged violation of a substantial covenant of the lease. At the present time, with the sole exception of plaintiff’s tenancy therein, the building here involved is completely vacant.
Despite plaintiff’s long occupancy and use of the fifth floor of the premises as a women’s specialty shop, there is no doubt that such tenancy is in violation of the certificate of occupancy. Moreover, contrary to plaintiff’s contention, such violation is not merely a technical one which may be readily corrected by a procedural amendment of the certificate, but is a substantial violation involving public safety. Neither “ building load” requirements nor fire safety provisions are met by the existing condition of the building for commercial use. It is necessary, therefore, to determine whether the “ cooperation ” which plaintiff seeks in this action extends so far as to compel defendant to make the necessary repairs and alterations which would permit the continued occupancy and commercial use of the space by plaintiff.
Undoubtedly, where a tenant seeks to correct a mere technical violation of a certificate of occupancy, a landlord should, in good faith, co-operate with such tenant or be barred from causing a forfeiture of the tenancy and the removal of the tenant because *1034 of such alleged violation (see Sol Apfel, Inc. v. Kocher, 61 N. Y. S. 2d 508, affd. 272 App. Div. 758; 10 Suf Realty Co. v. Fins, 202 Misc. 944). In the instant action, however, as above noted, there is more than a mere technical violation of the certificate of occupancy. As a matter of fact, the violation is of such a serious nature that the landlord has been fined by a court of law and faces a jail sentence in the event of the continued illegal use of the premises.
Moreover, the credible testimony and documentary evidence establish that the cost of making the necessary repairs, alterations and renovations for the occupancy of only one tenant would be exorbitant, uneconomic, and an inequitable burden to place on defendant. Even if defendant undertook to “ cooperate ” with plaintiff, as she requests in this action, there is serious doubt as to whether the Board of Standards and Appeals would grant the necessary variance to permit plaintiff to continue the use of the space she now occupies. Unless such variance were granted by the Board of Standards and Appeals, defendant’s “ cooperation” is of no import. In any event, in the opinion of the court, defendant’s duty to co-operate with plaintiff does not extend to the degree where he must expend a large sum of money to legalize plaintiff’s illegal use of the premises. Common law recognized no duty of a landlord to make structural alterations in order to cure an illegal occupancy (Gould v. Springer, 206 N. Y. 641, 647; New York Law of Landlord and Tenant, §§ 404, 412), nor do our present Emergency Rent Laws create such an obligation, as is indicated by the statutory provisions which expressly permit an owner to evict a tenant for “using or permitting a use of commercial space for illegal purposes” (Commercial Rent Law, § 8, subd. [b]; L. 1945, ch. 3; see, also, Civ. Prac. Act, § 1410, subd. 5).
Serious constitutional questions arise if a court were to compel a landlord to expend a large sum of money to correct a violation which, in the first instance, was created solely by the tenant. Contrary to plaintiff’s contention, our rent laws only undertake to guarantee the right of a tenant to a place to live or work without paying exorbitant rental occasioned by space shortages, and the right of an owner to a fair return from his property (Commercial Rent Law, § 1; L. 1945, ch. 3, as amd.; Business Rent Law, § 1; L. 1945, ch. 314, as amd.; Steinberg v. Forest Hills Golf Range, 303 N. Y. 577, 587). Nevertheless, this guarantee was not intended to require, nor does it, in fact, require the owner to maintain his property at a loss or to cure a tenant’s violation at a cost which, as in the instant case, would be economically unfeasible (see Harmor Operating Co. v. Vent- *1035 O-Matic Incinerator Corp., 1 A D 2d 551, 553-555; Trustees of Columbia Univ. v. Rogally, 281 App. Div. 485, 486; 2 West 32nd St. Corp. v. Levine, 199 Misc. 1020).
The court must also take into consideration the fact, as above noted, that plaintiff is the sole tenant in an otherwise empty seven-story building. She pays a rental of approximately $3,900 per annum, which is defendant’s only income from a building which was acquired at a cost of almost $145,000. Despite the obvious tremendous operating loss to defendant, plaintiff insists that the landlord must nevertheless “ cooperate ” in seeking a variance from the Board of Standards and Appeals and then make the required substantial alterations so that she may continue her use of the premises which she now occupies as a statutory tenant. With this, the court does not agree. A similar variance has never before been granted nor has plaintiff shown any reason why it is to be assumed that the Board of Standards and Appeals will now, for the first time, grant one upon defendant’s application therefor.
It is significant that even the expert witness called bjr plaintiff testified that if a variance were granted by the Board of Standards and Appeals, it would do so only upon such conditions as it deemed proper. These conditions undoubtedly would necessitate the expenditure by defendant of a minimum of $40,000 and possibly as much as $125,000, as indicated by defendant’s expert’s testimony. Thus, to compel defendant to “ cooperate ” and agree to some undisclosed application which plaintiff has in mind, with no specific plans or cost of alteration figures, is an obligation which this court cannot, in good conscience, reasonably impose upon defendant.
In the opinion of the court, there is no equitable reason for denying to defendant a final order of eviction. Even the very provisions of plaintiff’s lease, which, as a matter of law, were projected into the existing statutory tenancy, afford a sound basis for her dispossess. Paragraph 17 thereof provides as follows:
“ Tenant will not at any time use or occupy the demised premises in violation of the Certificate of Occupancy issued for the building of which the demised premises form a part, and in the event that any Department of the City or State of New York shall hereafter at any time contend and/or declare that the premises hereby demised are used for a purpose which is in violation of such Certificate of Occupancy, tenant shall, upon 5 days written notice from landlord, immediately discontinue such use of said premises.”
*1036 “The statement in this lease of the nature of the business to be conducted by tenant in the demised premises shall not be deemed or construed to constitute a representation or guaranty by landlord, that such business is lawful or permissible under the Certificate of Occupancy issued for the building of which the demised premises form a part, or otherwise permitted by law.” (Emphasis added.)
Thus, although paragraph 2 of the lease provides that plaintiff would use and occupy the demised premises for the conduct of a “ specialty shop and showroom,” this provision, when read in context with the foregoing paragraph 17, clearly means that such use would be permitted by the landlord only if it did not violate the certificate of occupancy or any provision of law. Inasmuch as plaintiff’s use of the premises is illegal and constitutes a public hazard and fire threat, such use must be considered a substantial violation of the lease.
There is no merit to the argument that because defendant purchased the building subject to the existing violation and accepted rent from plaintiff, she thereby acquired a permanent right to continue an illegal use which constitutes a public hazard. The elements of neither estoppel nor of waiver are present in such instance (2 West 32nd St. Corp. v. Levine, 199 Misc. 1020, 1022, supra; Civ. Prac. Act, § 1410, subd. 8).
Judgment is rendered, accordingly, in favor of defendant owner dismissing plaintiff’s complaint upon the merits. A final order of eviction in the consolidated summary proceeding, likewise, is rendered in favor of defendant owner. Plaintiff, however, may have a two-month stay of such order as provided in section 8 of the Commercial Bent Law. No costs are awarded.